# The South and North Alabama Railroad Company *v.* Sullivan, Adm'r.

## *Action for Damages.*

1. *The act of February 5th,* 1872, *explained.*—The act to prevent homicides, approved February 5th, 1872, was intended not merely to give compensation for the lost earnings of the slain by the wrongful act or omission of another, but is also punitive in its purpose; and its provisions apply as well to corporations as to natural persons.

2. *The damages recovered under that act become assets of the estate.*—The compensation given by the act does not go to the husband, wife, or child of the deceased, as such, but becomes assets of the estate, not subject to the payment of debts, and must be distributed as the personalty of an intestate is now distributed.

3. *The personal representative of the decedent must sue.*—The damages given must be recovered by the personal representative of the decedent; and when the person killed was a married woman, the law does not require the suit to be brought by the husband.

4. *A release given by the husband is no defence to a suit brought by the personal representative.*—A release given by the husband to a corporation by whose wrongful act or omission the wife was killed, is no bar, or defence to an action brought by her representative to recover damages.

5. *A general exception to a general charge is defective, unless the entire charge is erroneous.*—A general exception reserved to the general charge given by the court, which asserts several distinct propositions, some of which are correct, is defective, and does not require the appellate court to sift the charge with the view of ascertaining whether or not, some part of it is erroneous.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. W. B. WOOD.

Jerry Sullivan, the administrator of Mary Hughes, brought suit to the fall term 1875, of the Circuit Court of Jefferson county, against the South and North Alabama Railroad Company, to recover damages for the death of Mary Hughes, caused by an act of the corporation. The defendant demurred to the complaint on the grounds—*first,* that the complaint shows that Mary Hughes was a married woman; and *second,* that the complaint does not aver, that at the time of her death the said Mary Hughes had an income. The demurrer was overruled. The defendant then pleaded—*first,* "not guilty," with leave to give in evidence any special matter which could be pleaded by any special plea; *second,* Payment; *third,* that "the said Mary Hughes was, at the

time she came to her death, a married woman, the wife of James Hughes;" *fourth*, "the said defendant, for a further plea in this behalf, says that after the committing of said grievance alleged in said complaint, and before the commencement of this suit, to-wit, on the ninth day of January, 1873, one James Hughes, who was, at the time of committing the said grievance, the husband of the said Mary Hughes, by his certain writing of release, sealed with his seal, and now shown to the said court here, the date whereof is a certain day and year therein mentioned, to-wit, the day and year last aforesaid, did for himself, his heirs, executors and administrators, release and forever discharge the said defendant from all manner of action or actions, cause or causes of action, suits, claims and demands whatsoever, in law or equity, which he, the said James Hughes, then had, or which he, the said James Hughes, his heirs, executors or administrators should or might, at any time or times thereafter, have, claim, allege or demand against said defendant by way of damage, either general or special, actual or consequential, for only reason of grievance alleged in said complaint as aforesaid, as by the said deed or writing of release reference thereunto had will fully appear, and this the said defendant is ready to verify ; wherefore it prays judgment if the said plaintiff ought to have or maintain his aforesaid action thereof against it."

To this plea the plaintiff demurred, and the demurrer was sustained by the court.

On the trial, the plaintiff introduced as a witness W. J. Thompson, who testified that "he saw the deceased coming up the said track, meeting the switch engine or locomotive of the said railroad company, which was moving down said track at the rate of five or six miles per hour, the said engine having attached to it a stock car by the cow-catcher. The witness saw the deceased get off the track of the South and North Railroad, out of the way of the said locomotive, and step on the track of the Alabama and Chattanooga Railroad, and walk on the same with an umbrella stretched over her head, a small shawl on her shoulders, and a large, dark shawl pulled over her head. The said switch engine passed on down said road about fifty yards further and switched to the said track of the Alabama and Chattanooga Railroad, and push up said stock car on said Alabama and Chattanooga track at about the same rate of speed, and when it came within about fifteen feet of the deceased, some one exclaimed : "Look at that woman!" and the witness threw up his hand and hollowed, in order to give warning to the engineer of

the danger. He saw, or thought he saw, some one whom he took to be the engineer, move in the cab of the engine, and it seemed to him that the locomotive slackened its speed, but it soon overtook the woman, ran over her, producing instant death, and passed twelve feet beyond where she was first struck. The witness can not say whether or not the said engineer was ringing the bell, but recollects hearing some bells about that time, or just before that time, but can't say it was the bell of that engine. It was drizzling rain at the time, and the track was wet, the ground was muddy, and the track on which the deceased was walking afforded a dryer path than the adjacent ground; that persons commonly walked on said track in passing up and down the road, and never heard of the company forbidding any one doing so. The deceased at the time had a basket on her arm and a little book (like a memorandum book) in her hand, and was coming from the direction of her house towards town. A great deal of switching was going on at this time by said railroad company. And all this occurred within the corporate limits of the city of Birmingham, and near the machine shops of the said company, and about one hundred yards from the Birmingham depot. The deceased, at the time she was killed, was a married woman, the wife of — Hughes."

Other evidence corroborated the testimony of this witness, and none materially conflicted with it. It was also shown that the defendant had the right to use the track of the Alabama and Chattanooga Railroad Company.

The court then gave the following charges, viz.:

1. "The recent decision of the Supreme Court of Maryland, in a case very similar to the present in many circumstances, seems to me to be the proper rule on the subject of contributory and comparative negligence, and I adopt their decision, and charge that when a person walking on a railroad track is run over and killed by an engine belonging to a railroad company, the company is responsible in damages for such killing, though the deceased was guilty of the want of ordinary care and precaution in so walking on the track; provided it appears that the accident would not have occurred if the agents of the railroad company had used in running the engine which occasioned the killing, ordinary prudence and care in giving reasonable and usual signals in its approach, and in keeping a reasonable lookout.

2. "But now, if you find that the woman was guilty of negligence in walking on the railroad track, and not exercising the proper diligence by using her own means, such as

sight and hearing, of avoiding danger, and this negligence on her part contributed to her death, whilst the defendants were using ordinary care and prudence in running the train, then the plaintiff can not recover.

"But if you find that there was a lack of prudence on the part of both, then you may inquire as to comparative negligence of the parties, and if you find that although the want of care and prudence may be imputed to the woman in walking on the track, yet the railroad is not excused if the agents of the company fail to use ordinary prudence and care in running the engine, by giving the usual signals and keeping a reasonable lookout to prevent accidents to persons on the track; and the plaintiff may recover such damages as the jury may assess, not. exceeding the amount claimed."

To the general charges given by the court, the defendant excepted. And then asked in writing several charges, which the court refused to give. And the defendant excepted severally to the refusal of each of the said charges.

RICE, JONES & WILEY, and HEWITT & WALKER, for appellant.—1. When the right asserted by the plaintiff, if it exists at all, is given by statute, it must be asserted within the time, and in the mode prescribed by the statute; and the complaint is bad if it fails to show upon its face such conformity to the statute.—13 Ala. 366; 29 Ala. 700; 21 Ala. 501. A statute applicable in its terms to particular actions, can not be applied by construction to other actions standing on the same reason.—1 Brock. Rep. 523, 524; *Martin v. Mc-Ree*, 30 Ala. 116. The court is not called on to say what law the legislature should have made, but what law it did make as to the case to be decided.

2. The complaint contains no substantial cause of action; and therefore can not authorize or support the judgment for the plaintiff, even though not objected to on that ground in the court below.—40 Ala. 142. A married woman, if not killed by the wrongful act of a railroad company, but merely injured, could not maintain an action for the injury. Hence her administrator can not maintain an action for such injury when it produces her death. Nor does the statute entitle the administrstor of a person who has no income, to sue the corporation. As the complaint alleges no income, the court must presume the deceased had none.

3. The demurrer to the complaint should have been sustained. To make the complaint sufficient, it was essential that it should aver with reasonable certainty that the suit

was commenced within one year from the death of the plaintiff's intestate. In this particular the complaint is defective.

4. The act to prevent homicides, approved February 5th, 1872, is unconstitutional and void, because the subject is not clearly expressed in its title.—Section 2, of art. 4, of the Constitution of the State. It is very unlike the title of the New York statute referred to by the appellee. That is an "act requiring compensation for causing the death by wrongful act, neglect or default." The act in question is unconstitutional, because it revises and amends sections 22, 97 and 2298 of the Revised Code, and does not contain the sections revised and amended.—Const. *supra*. But whether the act be constitutional or not, its operation is confined to natural persons, and does not embrace corporations. All its provisions show this. Its second section is conclusive. That section provides that the action shall survive against the personal representative of the wrong-doer. Corporations have no personal representatives. Sections 2297 and 2298, of the Revised Code, do not embrace corporations, as is conclusively shown by section 2300 of the Code. This is unrepealed, and to be completely understood, must be read with sections 2297 and 2298 preceding it.

In the construction of this statute, section one of the Revised Code can have no application; it is restricted in its application to the statutes embraced in the Code; but even then, "the section declared that the word person, when used in it, includes a corporation, as well as a natural person; but this must be understood only of such provisions as will allow the signification to be given without violating their evident sense and meaning."—26 Ala. 498, 503.

5. The release given by the husband to the defendant, is a good and complete defence to this cause of action. And the demurrer to it interposed by the plaintiff, ought not to have been sustained. The husband, upon a distribution of the amount recovered by this action, would be entitled to one-half of it, and this the husband, for a consideration, could certainly have released to the appellant.

The first and second charges ought not to have been given by the court below. They recognize the doctrine of comparative negligence, which has not only been repudiated by the courts of a number of States—25 Ind. 185; 28 ib. 287; 33 ib. 335; 39 N. Y. 358; 16 Ill. 198; 22 ib. 264; 29 Ill. 447— but also by our own Supreme Court in the well considered case of *Hanlon pro ami v. Government Street Railroad Company,* (in manuscript). The case of *Bellefontaine Railway*

*Co. v. Hunter*, 33 Ind. 335, conclusively shows the rulings of the court below are wrong, and especially in the matter of contributory negligence of the married woman who was killed.

An action for the "instantaneous killing" of a married woman, not shown to be separated from her husband, through the wrongful act, omission or culpable negligence of another in Alabama, can not be maintained by her personal representative.—41 N. Y. Rep. 294, 303; 9 Cush. 108; 12 How. N. Y. Reps. 323.

Careful examination of the foregoing cases renders the conclusion inevitable, that no law of this State gives an action to the personal representative of such married woman against any person (natural or artificial) for wrongfully causing her instantaneous death.

SOMERVILLE & MCEACHIN, and S. A. M. WOOD, and E. L. CLARKSON, and JOHN W. TERRY, for appellees.—1. It is insisted that the act under which this suit is brought is unconstitutional, because it reverses and amends sections 2297 and 2298 of the Revised Code, and does not contain those sections. We submit that this act is an independent law, not purporting to be amendatory or revisory in its character, and is in itself complete, intelligible, and original in form, and therefore is not within either the letter or spirit of this constitutional requirement.—47 Ala. 667, 675; 48 Ala. 579, 583–84; 40 Ala. 77, 100; Cooley Const. Lim. 150, 151.

2. This act is a substantial embodiment of the provisions of the English statute usually called Lord Campbell's Act. The purpose of the act is clearly shown by its title.—2 Redf. on Railw. p. 207, § 179; 14 N. Y. 317. The word "person" includes a corporation as well as a natural person.—Code, § 1. In all cases where persons are mentioned in a statute, corporations are included if they fall within the general reason and design of the statute.—Ang. & Ames Corp. §§ 6, 193, 441; 15 Johns. 357; 26 Ala. 503.

3. The demurrer to the plea of release was properly sustained. There are two separate and distinct actions which may be brought for a personal injury to a married woman, not resulting in death. One is for the loss of the service and society of the wife, and must be brought in the name of the husband alone. The other is for the personal injury and sufferings of the wife, in which the husband and wife must join as parties.—21 Barb. 245; 2 Redf. on Railw. pp. 211, 212, 213, § 181; 8 Gray, 45. The act of 1871-2 gives the right

of action to the personal representative, and creates a new right of action. Such seems to be the construction of Lord Campbell's Act, by a high authority.—2 Redf. on Railw. pp. 207–8, note 3. The release carries the right of action of the husband for loss of services and society of the wife, but can not effect the right of action given by the statute to the personal representative of the party killed.—Acts 1871–2, p. 83.

4. The fact that the person killed was a married woman avails nothing as a defence to the action. The statute clearly includes such a case in its spirit and letter.—2 Redf. on Railroads, 213, § 180: In a case from Wisconsin, the Supreme Court of the United States entertained no doubt as to the right of the administrator of a deceased wife to recover for such an injury.—13 Wall. 270.

5. There is no force in the objection embodied in the second ground of demurrer, that the deceased had no income at the time of her death. If this action had been brought under sections 2297, 2298 of the Revised Code, it would have been pertinent, because the income of the deceased would then have been a leading factor in the measure of damages; but this suit is based on the act of 1872, and the question of income is irrelevant.—5 Wall. 90, 105; 23 Penn. 530.

6. The charges given and refused by the court below, in regard to the doctrine of *contributory and comparative* negligence are sustained by the opinions in 34 N. Y. 622; 36 Md. 366; 50 Mo. 461 (11 Am. Rep. 420); 2 Redfield on Railw. p. 192, § 177; Sanders on Neg. p. 53, § 3.

STONE, J.—Under the principles declared in *Savannah and Memphis Railroad Comppany v. Shearer*, 58 Ala. 672, a good and substantial cause of action is averred and shown against the defendant corporation. The question is, in whom is the right of action? In whose name should the suit be brought? The decedent, intestate, was, at the time of her death, a married woman, and the action was brought in the name of her administrator.

Commenting on the act "to prevent homicides," of February 5, 1872, Pamph. Acts 83, we, in *Savannah and Memphis Railroad Company v. Shearer*, said, in effect, that the purpose and result of the suit therein provided were not a mere *solatium* to the wounded feelings of surviving relations, nor compensation for the last earnings of the slain. We think the statute has a wider aim and scope. It is puni-

tive in its purposes. Punitive of the person or corporation by which the wrong is done, to stimulate diligence and to check violence, in order thereby to give greater security to human life; "to prevent homicides." And it is none the less punitive because of the direction the statute gives to the damages recovered. The damages, 'tis true, go to the estate of the party slain, and, in effect, are compensatory; but this does not change the great purpose of the statute—"to prevent homicides." Preservation of life—prevention of its destruction by the wrongful acts or omission of another,—is the subject of the statute; and all its provisions are but machinery for carrying it into effect.

To whom does the compensation go? Not to the husband, wife or child. The statute contains no provision that the recovery shall go to these. It shall be "distributed as personal property of an intestate is now distributed." That is, it goes to the estate of the decedent, with the limitation, that the fund "shall not be subject to the payment of the debts of the deceased." We say it goes to the estate of decedent, for otherwise this limitation would not be necessary. Only the property belonging to estates of decedents is "subject to the payment of" their debts.—*Dibble v. N. Y. & Erie R. R. Co.* 25 Barb. 183.

The language of the statute is, "when the death of a person is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action." This statute contains no qualifying clauses, limiting its remedial provisions to any class or classes of persons, or excluding any class from its wholesome terms. It employs the word person in its broadest sense, and it would seem that every being falling within that general designation may take shelter under its protecting wings.

The statute declares that "the amount so recovered shall be distributed as personal property of an intestate now is distributed." The plain meaning of this is, that the amount recovered in such action shall go in distribution to the persons, and in the proportion as personal property of the deceased would go, if he or she died intestate. Under our statutes, ample direction is given for the distribution of the personal property of married women who die intestate. Code of Ala. §§ 2252, 2261, 2714. This provision of the statute can not be carried out, unless we allow the personal representative of the person whose death was caused by the "wrongful act or omission of another," to bring the suit. The statute creates the right—a right unknown to the com-

[South & North Ala. Railroad Co. v. Sullivan.]

mon law—and provides a remedy.   No other remedy can be pursued.   Hence, if we hold that the personal representative of a married woman can not maintain an action under this statute, we deny all redress for the killing of married women by the wrongful act or omission of another.   And we also fail, in such cases, to give any operation to the clause of the statute which directs that "the amount so recovered shall be distributed as personal property of an intestate is now distributed."   We do not feel at liberty to deny, in cases which may occur frequently, all operation to so important a clause as that we are commenting on; or to withhold from married women and their distributees, all benefit under this most wholesome statute.

It seems to us that our modern policy, called the married woman's law, should exert some influence in the interpretation of this statute.   Under the common law, all the personal property which belonged to the wife at her marriage, or which accrued to her during the coverture, could be reduced to possession by the husband, and thereby became his.   It followed that a transmission of personal property by a decedent wife, was scarcely known.   Under this rule, a suit for an injury done the wife must be prosecuted in the joint names of husband and wife, because the damages, when recovered, would belong to the husband.   Not so under the woman's law.   "All property of the wife, held by her previous to the marriage, or which she may become entitled to after the marriage, in any manner, is the separate estate of the wife."—Code of Ala. § 2705.   This was the law of this State when the act "to prevent homicides" was passed.

We think that in the enactment of the statute of February 5, 1872, the legislature meant what they said, "that when the death of a person is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action" therefor, whether the decedent was *sui juris* or not.   In the case of *Dickens v. N. Y. Cen. R. R. Co.*, the administrator of a married woman was allowed to maintain an action for her death, caused by the negligence of defendant.   Justice DENIO, delivered the opinion of the Court.—23 N. Y. 158; see *Sanford v. Augusta,* 22 Maine, 536; *Eden v. Lex. & Pr. R. R. Co.* 14 B. Monroe, 204; *McKinney v. Western Stage Co.* 4 Clarke, Iowa, 420; *Williams v. Haldredge,* 22 Barb. 396; *Gunn v. Hudson R. R.* 41 N. Y. (Keyes) 294; *Railroad v. Whitten,* 13 Wall. 270.

In the act under discussion, the right to maintain an action in the name of the personal representative of a person

whose death was "caused by the wrongful act or omission of another," is limited to cases in which an action could have been maintained by the decedent, if living, for the same act or omission. It is here contended that the wife, if living, could not have maintained an action in her own name, without joining her husband as co-plaintiff, and that her personal representative can not sue. We do not think this is either the object or sense of the clause referred to. The language, "if the former could have maintained an action against the latter for the same act or omission, had it failed to produce death," was intended to declare the character of act or omission which would support the action; not the person by whom it could be maintained. That had already been provided for in the declaration that the personal representative should sue.

What we have said above, taking in connection with our rulings in *Tanner v. Louisville and Nashville Railroad Company*, and *Savannah and Memphis Railroad Company v. Shearer*, at the present term, shows conclusively that the court did not err, to the prejudice of appellant, in the several rulings on demurrer.

There are a few decisions which recognize the doctrine of comparative negligence in suits like this.—See *Chicago and R. I. Railroad Co. v. Still*, 19 Ill. 499; *Chicago B. & Q. R. R. Co. v. Payne*, 49 Ill. 499; *Ill. Cen. R. R. Co. v. Bucher*, 55 Ill. 379. But we do not recognize that doctrine as sound. In one part of the general charge, the Circuit Court spoke of comparative negligence; but the exception to that charge was general, while the charge itself was given in connection with other matter that was free from objection. In such case we will not sift the charge, with a view of ascertaining if some portion of it does not assert an erroneous proposition.

The charges requested were all properly refused.—See *Tanner v. Louisville and Nashville R. R. Co.* at present term; see *Dennis v. N. Y. Cen. & H. R. Railroad Co.* 47 N. Y. 400.

The release of James Hughes, husband of intestate, is no bar to this action.—See *Stewart v. Kissam*, 2 Barb. Sup. Ct. 493. What effect it may have on his distributive interest in the settlement of his wife's estate, is not for us, at this time, to say.

Judgment affirmed.

On application for a rehearing, the following opinion was afterwards delivered:

PER CURIAM.—We do not, at all, deny that in cases like the present, when the plaintiff has contributed proximately to the injury of which he complains, and there is nothing else in the transaction, there can be no recovery. We will not enter into the inquiry of *comparative* negligence. On the other hand, we maintain, with inflexible purpose, the general doctrine we declared in *Tanner v. The Louisville & Nashville Railroad Co.*, that primary negligence of one party does not absolve the other from continued diligence, even to the last moment of time, when the catastrophe may be averted. We intended to decide, and now repeat it, that if one, by his own negligence, put himself in peril—yet, if the party sought to be charged, after discovering the peril, or, after being placed in a condition where, if diligent, he would have discovered the peril in time to avert the catastrophe, fails to exert proper diligence, which, if exerted, would probably prevent the disaster, this is culpable negligence, to which the primary negligence of the plaintiff is but remotely contributory. We asserted, and again assert, that if those in charge of a train, engaged in the business of switching cars, within a city, where people are constantly passing, back the train, having box cars in front of the engine, so as to conceal the track on which the train is moving, from the view of those having charge of it, and have no watchman or employee on or near the train to look ahead, and, if need be, to warn persons of the approaching danger, or have the train stopped; and if injury to any person be thereby inflicted, this is, *per se*, negligence, for which an action will lie, unless the party injured, after discovering his peril, fail to use proper exertions to extricate himself therefrom. If he did so fail, this would be proximate, contributory negligence, which would deprive him of all right to recover.

We are aware that some adjudged cases hold the converse of this proposition; and many, perhaps a majority of them, state the proposition broadly, without drawing the distinction which we have attempted. Perhaps the distinction was unnecessary in those cases. But whether so or not, we adhere to our views, and decline to follow cases that assert the contrary doctrine. We do not, in this, intend to declare a rule that is stricter, or less strict, than that declared in *Tanner v. L. & N. R. R. Co. supra.*

And we adhere to our construction of the act " to prevent homicides," and the right of the personal representative of a married woman to maintain the action therein provided. Any other construction would leave no remedy whatever,

[Hubbard v. Allen.]

when the person whose death was "caused by the wrongful act or omission of another," was a married woman. The right and remedy are the creatures of the statute; no common law action could have been maintained in such a case; and the rule in such cases is, that only the action which the statute provides will lie.

The application for a rehearing is overruled.