## LOUIS PIZITZ DRY GOODS COMPANY, INC. v. YELDELL, ADMINISTRATOR.

ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.

No. 171. Argued February 25, 28, 1927.—Decided April 11, 1927.

A state law allowing punitive damages to be assessed in actions against employers for deaths caused by negligence of their employees—the object of the statute being to prevent negligent destruction of human life—does not violate the due process clause of the Fourteenth Amendment. P. 114.

213 Ala. 222, affirmed.

ERROR to the Supreme Court of Alabama, to review a judgment sustaining a recovery in an action for death by negligence. ‹

*Mr. J. P. Mudd* for plaintiff in error.

*Mr. Benjamin F. Ray,* with whom *Mr. Hugo L. Black* was on the brief, for defendant in error.

MR. JUSTICE STONE delivered the opinion of the Court.

Defendant in error, an administrator, brought suit in the circuit court of Jefferson County, Alabama, to recover for the wrongful death of his intestate, caused by the negligent operation of an elevator by an employee of plaintiff in error in its department store. The action was founded upon the so-called Homicide Act of Alabama, § 5696, Code of 1923, printed in the margin.* This statute authorizes the recovery of damages from either a principal or an agent, in such amount as the jury may assess, for wrongful act or negligence causing death. The jury returned a verdict of $9,500 and judgment for that amount was affirmed on

---

* "A personal representative may maintain an action, and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama and not elsewhere for the wrongful act, omission or negligence of any person or persons, or corporation, his or their servants, or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death. Such action shall not abate by the death of the defendant, but may be revived against his personal representative; and may be maintained, though there has not been prosecution, or conviction, or acquittal of the defendant for the wrongful act, or omission, or negligence; and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions. Such action must be brought within two years from and after the death of the testator or intestate."

appeal. 213 Ala. 222. The case comes here on writ of error. Jud. Code, § 237, as amended.

Plaintiff in error does not deny its liability for the negligent act of its employee. But it calls attention to the fact that the Homicide Act imposing liability upon the employer for death resulting from the wrongful acts, omissions or negligence of its employees, as interpreted by the state courts, permits the jury, as in this case, to assess punitive damages against the employer for the mere negligence of its employee. *Richmond & Danville R. R.* v. *Freeman,* 97 Ala. 289. A statute which so authorizes the mulcting of the employer, it is argued, is "unreasonably oppressive, arbitrary, unjust, violative of the fundamental conceptions of fair play, and, therefore, repugnant to the Fourteenth Amendment."

The legislation now challenged has been on the statute books of Alabama in essentially its present form since 1872. The liability imposed is for tortious acts resulting in death, but the damages, which may be punitive even though the act complained of involved no element of recklessness, malice or wilfulness, may be assessed against the employer who, as here, is personally without fault. The Supreme Court of Alabama has repeatedly ruled that the statute is aimed at the prevention of death by wrongful act or omission. *Savannah & Memphis R. R.* v. *Shearer,* 58 Ala. 672, 680; *South and North Alabama R. R.* v. *Sullivan,* 59 Ala. 272, 279. "The statute is remedial, and not penal, and was designed as well to give a right of action where none existed before, as to 'prevent homicides,' and the action given is purely civil in its nature for the redress of private, and not public wrongs." *Southern Ry.* v. *Bush,* 122 Ala. 470, 489. In defining the scope of the act, the state court has pointed out that the extent of the culpability and the amount of the verdict are for the jury and that its finding is not to be disturbed unless the verdict

is " induced or reached on account of prejudice, passion, or other improper motive or cause." *Mobile Electric Co. v. Fritz,* 200 Ala. 692, 693. The case was argued here on the assumption that its scope was thus limited and we so interpret the statute. Its constitutionality has been upheld by both state and federal courts. *Richmond & Danville R. R. v. Freeman, supra; U. S. Cast Iron & Foundry Co. v. Sullivan,* 3 Fed. (2d) 794.

The objections now urged to a new form of vicarious liability were considered and rejected in the Workmen's Compensation cases, *New York Central R. R. v. White,* 243 U. S. 188; *Mountain Timber Co. v. Washington,* 243 U. S. 219, as they must be rejected here. The extension of the doctrine of liability without fault to new situations to attain a permissible legislative object is not so novel in the law or so shocking " to reason or to conscience " as to afford in itself any ground for the contention that it denies due process of law. The principle of *respondeat superior* itself and the rule of liability of corporations for the wilful torts of their employees, extended in some jurisdictions, without legislative sanction, to liability for punitive damages, *Boyer & Co. v. Coxen,* 92 Md. 366; *Hanson v. E. & N. A. R. R.,* 62 Me. 84; *Jeffersonville R. R. v. Rogers,* 38 Ind. 116; *Atlantic & Great West. Ry. v. Dunn,* 19 Ohio St. 162; see *Jefferson County Savings Bank v. Eborn,* 84 Ala. 529, 534; *contra, Lake Shore Ry. v. Prentice,* 147 U. S. 101, are recognitions by the common law that the imposition of liability without personal fault, having its foundation in a recognized public policy, is not repugnant to accepted notions of due process of law. No constitutional question was presented in *Lake Shore Ry. v. Prentice, supra,* and this Court thus was free to choose as between these conflicting common law rules the one which it thought most appropriate.

Lord Campbell's Act and its successors, establishing liability for wrongful death where none existed before,

the various Workmen's Compensation Acts, imposing new types of liability, are familiar examples of the legislative creation of new rights and duties for the prevention of wrong or for satisfying social and economic needs. Their constitutionality may not be successfully challenged merely because a change in the common law is effected. As interpreted by the state court, the aim of the present statute is to strike at the evil of the negligent destruction of human life by imposing liability, regardless of fault, upon those who are in some substantial measure in a position to prevent it. We cannot say that it is beyond the power of a legislature, in effecting such a change in common law rules, to attempt to preserve human life by making homicide expensive. It may impose an extraordinary liability such as the present, not only upon those at fault but upon those who, although not directly culpable, are able nevertheless, in the management of their affairs, to guard substantially against the evil to be prevented. See *St. Louis & Iron Mountain Ry.* v. *Taylor,* 210 U. S. 281; *Texas & Pacific Ry.* v. *Rigsby,* 241 U. S. 33, 43; *Wilmington Mining Co.* v. *Fulton,* 205 U. S. 60; cf. *Van Oster* v. *Kansas,* 272 U. S. 465. Or it may impose on the business or enterprise in which such loss of life occurs the economic burden of the protective measure adopted, *New York Central R. R.* v. *White, supra; Second Employers' Liability Cases,* 223 U. S. 1; or return to and substitute the common law method of permitting the jury to fix the amount of recovery, at least to the extent of an exercise of its reasonable judgment, for the present-day method of weighing and measuring the value of human life.

The distinction between punitive and compensatory damages is a modern refinement. The first use of the term " exemplary damages" is ascribed to Lord Camden in *Huckle* v. *Money,* 2 Wils. 205. See Sedgwick, Damages, § 348. Although sporadic instances of new trials being

ordered because the verdict was excessive may be found in the early common law, see *Wood* v. *Gunston,* Style 466; *Chambers* v. *Robinson,* 2 Stra. 691, it was not until much later that the formal practice developed, *Duberley* v. *Gunning,* 4 T. R. 654; *Wilford* v. *Berkeley,* 1 Burr. 610; Mayne, Damages, 691, and the fixed rules of damage evolved.

*Judgment affirmed.*