575 So.2d 551 (1991)
ALABAMA POWER COMPANY
v.
Gerald L. TURNER, as administrator of the estate of Kenneth Allen Turner, deceased.
89-408.
Supreme Court of Alabama.
January 11, 1991.
*552 Sterling G. Culpepper, Jr., M. Roland Nachman, Jr. and David R. Boyd of Balch & Bingham, Montgomery, for appellant.
Frank M. Wilson of Beasley, Wilson, Allen, Mendelsohn & Jemison, Montgomery, for appellee.
ALMON, Justice.
Gerald Turner, as administrator, filed this wrongful death action against Alabama Power Company ("Alabama Power") after his son, Kenneth Turner, who was a truck driver, was electrocuted when the rear door of his parked truck came in contact with an energized guy wire as he attempted to close the door. A jury found Alabama Power guilty of negligence and awarded Turner $5,000,000. The trial court entered a final judgment in that amount and, following a hearing consistent with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), denied Alabama Power's motions for new trial and for j.n.o.v.
Alabama Power contends that the judgment deprives it of its property in violation of the due process clause of the Fourteenth Amendment of the United States Constitution and Article I, §§ 6 and 13, of the Alabama Constitution; deprives it of its rights under the Fourth, Fifth, Sixth, and Eighth Amendments of the United States Constitution; and deprives it of equal protection of the laws.
The issue of the constitutionality of awarding punitive damages under the Alabama wrongful death statute has been raised in this Court numerous times in recent years. See, e.g., Kumar v. Lewis, 561 So.2d 1082 (Ala. 1990); Olympia Spa v. Johnson, 547 So.2d 80 (Ala.1989); Central Alabama Elec. Co-op. v. Tapley, 546 So.2d *553 371 (Ala.1989); Alabama Power Co. v. Courtney, 539 So.2d 170 (Ala.1988); Alabama Power Co. v. Capps, 519 So.2d 1328 (Ala.1988), appeal dismissed, 486 U.S. 1002, 108 S.Ct. 1723, 100 L.Ed.2d 188 (1989); Alabama Power Co. v. Cantrell, 507 So.2d 1295 (Ala.1986); Merrell v. Alabama Power Co., 382 So.2d 494 (Ala. 1980). However, in several of those cases the constitutional issue was not properly presented for review. For example, in Alabama Power Co. v. Capps, supra, we recognized the following fundamental principle of appellate procedure:
"An appellant cannot invoke action by a court and have a case tried on certain issues and then later, when dissatisfied with the result, raise an entirely new issue, such as the constitutionality of the statutes under which he was proceeding, on motion for a new trial."
519 So.2d at 1330; see also, Alabama Power Co. v. Courtney, supra. In order for an appellate court to review a constitutional issue, that issue must have been raised by the appellant and presented to and reviewed by the trial court. HealthAmerica v. Menton, 551 So.2d 235 (Ala.1989); Marion v. Hall, 429 So.2d 937 (Ala. 1983); Stephens v. Central of Georgia R.R., 367 So.2d 192 (Ala.1979). Additionally, in order to challenge the constitutionality of a statute, an appellant must identify and make specific arguments regarding what specific rights it claims have been violated. Central Alabama Elec. Co-Op. v. Tapley, supra.

I. Fourth, Fifth and Sixth Amendments
Alabama Power's argument that the judgment violates its rights under the Fourth, Fifth, and Sixth Amendments does not identify any specific right it believes has been violated. Alabama Power has also failed to make any specific arguments regarding its constitutional challenges under any of these amendments. As a result, this Court will not address those arguments. Ala.R.App.P. 28(a)(5); Hickox v. Stover, 551 So.2d 259 (Ala.1989); Tapley, supra. However, Alabama Power's argument based on due process under the Fourteenth Amendment and its Eighth Amendment argument have been properly presented and will be addressed.

II. Eighth Amendment
Alabama Power contends that punitive damages awards under Alabama's wrongful death statute constitute "excessive fines" and therefore violate the Eighth Amendment. This Court has specifically and repeatedly rejected this argument. Kumar v. Lewis, 561 So.2d 1082 (Ala.1990); Central Alabama Elec. Co-op. v. Tapley, supra; Industrial Chem. & Fiberglass Corp. v. Chandler, 547 So.2d 812 (Ala. 1988). Additionally, the United States Supreme Court has held that the excessive fines clause of the Eighth Amendment does not apply to punitive damages awards in cases between private parties. Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). See also Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (establishing the constitutional boundaries of the Eighth Amendment). We continue to adhere to our view that punitive damages awards under our wrongful death statutes do not violate the Eighth Amendment.

III. Due Process
Alabama Power argues that Alabama's wrongful death statute denies it its due process rights under the Fourteenth Amendment and Article I, §§ 6 and 13, of the Alabama Constitution because the statute allows only punitive damages, and not compensatory damages, upon a finding of negligence by a preponderance of the evidence, and, further, allows a jury to assess the amount of damages at its discretion. We recently reviewed and rejected this argument in Central Alabama Elec. Co-op. v. Tapley, supra. Because these issues are argued generally and collectively in the briefs and because they mirror in many instances the same arguments presented in Tapley, supra, we quote rather extensively from that opinion:
"Does the due process clause of the Fourteenth Amendment require that juries *554 be guided by objective criteria in order to properly assess punitive damages? Stated perhaps more accurately, is it fundamentally unfair for a jury to award punitive damages without the guidance of objective criteria?
"We recognize, indeed, we are faced almost daily with, the comments of various jurists, philosophers, scholars, and members of the national bar assailing the practicality in civil cases of the jury system and lamenting its continued existence. The three bases of criticism most often voiced are the helplessness and lack of sophistication of jurors obligated to resolve issues in complex litigation; the tendency of modern juries to overcompensate injured tort victims for noneconomic damages; and the `unbridled' discretion jurors enjoy in imposing massive punitive damages awards. On the larger scale, those complaints, and the very issue under review here, are really attacks on the civil justice system as a whole.
"Just because `juries have always done it that way' is no adequate response. But we must pause to recall that, until very recently, attacks on jury verdicts have not been rooted in the federal constitution. History instructs us that, in the typical case involving noneconomic damages and punitive damages, once the jury has been instructed on and determines liability, the amount of compensation to be awarded and the extent of punishment to be meted out are subjects unquestionably within the sacred domain of the jury's discretion. A large jury verdict was subject to judicial revision only if the form of the verdict was incorrectably flawed or if the verdict was undeniably the product of some improper motive, such as bias or prejudice, or bent with an improper emotion, such as passion.
"Tossed into the lessons of the past is the fact that the only damages available in a wrongful death action brought pursuant to Alabama law are punitive damages. The sanctity of human life, the noble goal of preserving human life, and society's desire to punish those whose conduct results in the loss of human life, have all been accepted by our Legislature as criteria outweighing the seeming anomaly of permitting punitive damages for simple negligence. This view rests on the premise that one may be adequately compensated for his injuries, but the value of human life has no measure. Punishing the tort-feasor dissuades others from engaging in life-endangering conduct.
"To paraphrase a famous (or infamous) quotation, the American system of civil justice is the worst in the worldexcept for all of the rest. As the `problems' with the jury system have been pointed out with increasing frequency, so has the justice system responded.
"If a defendant is dissatisfied with a jury's verdict, and feels that it is excessive, or otherwise flawed, he is entitled to the protection of a variety of safeguards. The defendant may move for remittitur and a new trial in the trial court, and may appeal as a matter of right from the denial of either. He is entitled to a de novo review of the jury's verdict on appeal. The appellate courts in this state have the authority to order a new trial due to the excessiveness of the verdict, to conditionally order a new trial unless the plaintiff accepts a remittitur, and to order the trial court to conditionally order a new trial unless the plaintiff accepts a remittitur.
"If a defendant properly moves the trial court to do so, the trial court is obligated to state on the record its reasons for either interfering with the jury's verdict or not interfering with it. And, in making the determination of whether the verdict is excessive (or inadequate), a trial court is authorized to consider the following non-exclusive list of factors:
"`(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If *555 grievous, the damages should be much greater.'
"`(2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or "cover-up" of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.'
"`(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.'
"`(4) The financial position of the defendant would be relevant.'
"`(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.'
"`(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.'
"`(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.'
"Green Oil Co. v. Hornsby, 539 So.2d 218, 223-24 (Ala.1989) (quoting Aetna Life Ins. Co. v. Lavoie, 505 So.2d 1050, 1062 (Ala.1987) (Houston, J., concurring)).
"Punitive damages should not exceed an amount necessary to accomplish society's goals of punishment and deterrence. But the degree of punishment necessary to achieve those goals changes with each case. In the rarest cases, involving the most egregious conduct, juries should be entitled to punish defendants so severely as to destroy them; justice demands that. But in the typical punitive damages case, the award should punish without destroying. That, in a nutshell, is the way punitive damages and the civil justice system coexist.
"The identical case tried to different juries will likely produce different results, but that does not necessarily smack of a lack of fundamental fairness. That is inherent in the nature of juries, given the imperfection of man and his system of justice. Some discretion must be afforded to juries to assess punitive damages as they see fit. We can envision no set of carved-in-granite standards that would guide every jury in every conceivable case. Discretion tolerates elasticity, but the jury's discretion is by no means unbridled. The `whims' of any given jury are still harnessed by the authority of the trial court and appellate courts.
"Due to the safeguards now in place in Alabama, we find no merit to [the defendant's] allegation that its rights to substantive due process have been denied, or based on the issues preserved for our review, that our wrongful death statute is unconstitutional. We have confidence in our system of civil justice and faith that that system will accommodate change as it is required.
"We close our discussion with the wisdom of Mr. Justice Cardozo:
"`The eccentricities of judges balance one another. One judge looks at problems from the point of view of history, another from that of philosophy, another from that of social utility, one is a formalist, another a latitudinarian, one is timorous of change, another dissatisfied with the present; out of the attrition of diverse minds there is beaten something which has a constancy and uniformity and average value of greater than its component elements. The same thing is true of the work of juries. I do not mean to suggest that the product in either case does not betray the flaws inherent in its origin. The flaws are there as in every human institution. Because they are not only there but visible, we have faith that they will be corrected. There is no assurance that the rule of the majority will be the expression of *556 perfect reason when embodied in constitution or in statute. We ought not expect more of it when embodied in the judgments of the courts. The tide rises and falls, but the sands of error crumble.' [Quoting Cardozo, The Nature of the Judicial Process 143 (1921).]"
546 So.2d at 376-78 (footnotes omitted).

IV. Equal Protection
Additionally, Alabama Power contends that the exception of wrongful death actions from Ala.Code 1975, §§ 6-5-410 and -411, violates its equal protection rights under the Fourteenth Amendment. These statutes restrict punitive damages in tort actions other than for wrongful death to acts of oppression, fraud, wantonness, or malice, proved by clear and convincing evidence, and they place a ceiling of $250,000 on such awards. Alabama Power argues that this attempted classification is not a rational method of furthering a legitimate State purpose and, further, that the distinction between punitive damages awards in wrongful death actions and such awards in all other tort actions bears no relation to the statutory purpose.
The equal protection guarantee requires that a legislative classification is properly drawn. Our review of this issue is limited to whether it is conceivable that the classification bears a rational relationship to an end of government that is not prohibited by the Constitution of the United States. Nowak, Rotunda, and Young, Constitutional Law § 14.3, at 580 (3d ed. 1986).
The exception of wrongful death actions from legislation restricting punitive damages is warranted, because wrongful death actions differ critically from the actions to which the restrictions apply. In Alabama, only punitive damages are available in wrongful death actions, and these damages may be awarded against a defendant based on its negligent conduct. The United States Supreme Court approved Alabama's policy of awarding punitive damages in wrongful death actions in Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112, 47 S.Ct. 509, 71 L.Ed. 952 (1927). The Court recognized that "the purpose of Alabama's wrongful death act [Homicide Act of Alabama, § 5696, Code of 1923] is to strike at the evil of the negligent destruction of human life" and concluded: "We cannot say that it is beyond the power of a legislature, in effecting such a change in common law rules, to attempt to preserve human life by making homicide expensive." 274 U.S. at 116, 47 S.Ct. at 510.
The protection of the lives of its citizens is certainly a legitimate state interest. By allowing punitive damages to be assessed against defendants in wrongful death actions in a manner different from the way punitive damages are assessed in other civil actions, the legislature has undoubtably recognized that no arbitrary cap can be placed on the value of human life and is "attempt [ing] to preserve human life by making homicide expensive." 274 U.S. at 116, 47 S.Ct. at 510. The exception of wrongful death actions from legislation imposing caps on the amount of punitive damages that can be awarded in civil actions bears a rational relationship to a legitimate state interest that is not prohibited by the Constitution. Therefore, that exception does not violate the guarantee of equal protection.

V. Jury Testimony
Alabama Power asserts that, if this Court denies its request for a new trial on the above grounds, then this case should be remanded to allow it the opportunity to develop evidence regarding alleged extraneous facts considered by the jury during its deliberations. Specifically, Alabama Power contends that it was wrongfully denied the opportunity to question a juror during post-trial proceedings regarding either comments she allegedly made about Alabama Power's liability insurance or any individual ill will on her part toward Alabama Power. Alabama Power also contends that the trial court erred in striking the affidavit of a fellow juror that set forth the substance of those alleged comments.
As a general rule, neither testimony nor affidavits are admissible to impeach a jury's verdict. Fabianke v. Weaver, 527 *557 So.2d 1253 (Ala.1988); Wiberg v. Sadoughian, 514 So.2d 940 (Ala.1987). An exception to this rule exists when an affidavit tends to show extraneous facts that have influenced the jury's deliberations and the resulting verdict. Fabianke, supra. Affidavits, such as the one at issue here, concerning "the debates and discussions of the case by the jury while deliberating thereon" do not fall within the exception to the rule. Rather, statements that have been held admissible under this exception usually are made to the jury by someone not on the jury. Weekley v. Horn, 263 Ala. 364, 82 So.2d 341 (1955), cited in Fabianke, supra. Thus, the trial judge did not err in striking the affidavit of one juror and in refusing to allow another juror to be questioned during post-trial proceedings.

VI. Excessiveness of the verdict
Alabama Power contends that the $5,000,000 award in this case is so excessive that a new trial is warranted or a remittitur is mandatory. Alabama Power further contends that the jury verdict is not supported by the facts and that there is evidence to support its proposition that the award was based on bias, passion, prejudice, or other improper motive.
The record reflects that, consistent with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), the trial court held a hearing and stated, on the record, its reasons for denying Alabama Power's motion for a new trial based upon the alleged excessiveness of the jury's verdict. The following excerpt from that order reveals that the trial judge reviewed the evidence in a manner consistent with the factors outlined in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989):
"Defendant also contends that the jury's verdict of five million dollars was excessive and that this Court should conditionally grant a new trial upon the Plaintiff's failure to accept a remittitur. This Court will examine that aspect of the motion and the jury's verdict in light of the decision in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). In that regard, the Court has held a hearing and considered additional evidence submitted by the parties as well as the evidence which was submitted to the jury during the trial of this case. The Court will discuss that evidence in light of the factors outlined in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989).
"Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the Defendant's conduct. In this case, the Plaintiff's son was killed. There is no greater harm which can occur. The purpose of the Alabama Wrongful Death Act under which this claim was brought is to preserve human life. Consideration of this factor weighs heavily in favor of the conclusion that the jury's verdict was not excessive.
"The Defendant's conduct should be considered. In this case it was undisputed that immediately prior to the Plaintiff's son striking the guy wire with his truck door the clearance between that guy wire and the closest energerized wire was substantially less than that required by Alabama Power Company's own standards and every other recognized standard for electrical transmission wires. Defendant admitted that this condition was extremely dangerous and likely to cause death.
"The evidence was in dispute as to what caused the dangerous condition to occur. If the Plaintiff's evidence is believed the dangerous condition existed for some fifteen months prior to the incident. During that time Alabama Power Company performed repairs and service in a number of locations near this pole. In addition, each month an Alabama Power Company employee walked this area to read meters.
"The Alabama Power Company engineer who designed these lines and equipment admitted that he `eye-balled' the location rather than performing computations to determine whether there were adequate clearances. The construction work was inspected by several employees, including this engineer, after the work was completed but this dangerous *558 condition was not noticed or if noticed was not corrected.
"This was a lengthy case and there is a great deal of additional evidence concerning the Defendant's conduct which will not be discussed here. This Court is firmly of the opinion that the evidence of Defendant's conduct in this case certainly does not weigh in favor of reducing this verdict.
"Any profit of the Defendant as [a] result of the wrongful conduct should be considered. The Defendant indicated in answer to post-judgment interrogatories that it does not know what it would cost to institute a periodic inspection program of its wires and equipment which could have identified this dangerous condition prior to the incident. There was testimony that the Defendant has more than one million poles across the State and more than three hundred thousand guy wires. Clearly, such an inspection program would involve substantial expenditures. By not having such a program this Defendant has certainly profited although this Court is not in a position to quantify that profit.
"The financial position of the Defendant is relevant. Alabama Power Company has admitted that this verdict will have no adverse impact on it. Certainly, in that circumstance its financial condition cannot be used as a factor to reduce the verdict. It seems unlikely that the purpose of deterrence would be fulfilled if this verdict were reduced since even this verdict is insignificant to the profits and assets of this Defendant.
"The other factors discussed in Green Oil do not appear to this Court to have any application in this case. Defendant Alabama Power Company does not argue that those factors justify reduction of the verdict.
"Defendant does not argue that this jury verdict resulted from bias, passion, prejudice, corruption or other improper motive on behalf of the jury except to say that its size alone indicates that. This Court has considered the jury and its function in this case and specifically finds that this verdict was not the result of any bias, passion, prejudice, corruption or other improper motive. Considering the evidence presented, this verdict is not so large as to shock the judicial conscience of this Court.
"FINDINGS OF FACT
"1. The verdict in this case was not the result of bias, passion, prejudice, corruption or other improper motion.
"2. The amount of the verdict in this case was justified by the evidence presented.
"3. The amount of the verdict in this case does not exceed an amount that will accomplish society's goal of punishment and deterrence.
"4. The evidence in this case indicates conduct by the Defendant which justifies imposition of punitive damages in the amount of this jury verdict."
However, as we recognized in Burlington Northern R.R. v. Whitt, 575 So.2d 1011, at 1024 (Ala. 1990), the trial court's compliance with the Hammond guidelines does not relieve us of our responsibility to consider whether the award is excessive. Our review of the record in this case, together with our consideration of the damages awards in other wrongful death actions, leads us to the conclusion that the award of $5,000,000 in this case is excessive and should be reduced by $1,500,000. Therefore, we affirm the trial court's judgment, conditioned on the acceptance of a remittitur of $1,500,000 by the plaintiff, within 28 days of the date of this opinion, which will result in a judgment in his favor in the amount of $3,500,000.
Accordingly, the judgment is affirmed, conditioned upon the plaintiff's acceptance of the remittitur of $1,500,000 as ordered by this Court.
AFFIRMED CONDITIONALLY.
*559 MADDOX,[*] JONES, SHORES and STEAGALL, JJ., concur.
HOUSTON, J., dissents.
HOUSTON, Justice (dissenting).
The Constitution of Alabama 1901, Art. I, § 1, provides as follows:
"That the great, general, and essential principles of liberty and free government may be recognized and established, we declare:

"That all men are equally free and independent; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty and the pursuit of happiness."
(Emphasis supplied.) This declaration of the right to life appeared in the Alabama Constitution of 1875 (Art. I, § 1).[1] "[A]ll men ... are endowed ... with [the right to] life"the right to life that is "inalienable" ("that may not be taken away," Webster's New World Dictionary 708 (2d college ed. 1986), or that "[is] not capable of being surrendered or transferred without the consent of the one possessing such [right]" Black's Law Dictionary 759 (6th ed. 1990)).
The Alabama Constitution has declared that the citizens of Alabama have a right to life. Art. I, § 13, of the Alabama Constitution, provides "that every person, for any injury done him, in his ... person ..., shall have a remedy by due process of law." Therefore, with the Constitution declaring that there is both a right to life and a right to a remedy for a violation of that right, it is my opinion that neither the legislature nor the judiciary can take away from the citizens of Alabama the right to be compensated for the deprivation of the right to life if that deprivation is caused by the wrong of another. The compensation must be paid to the estate of the decedent, which is a legal extension of the decedent beyond death.
I have struggled with this Court's interpretation of the Alabama Wrongful Death Act (Ala.Code 1975, § 6-5-410). See my opinion in Tatum v. Schering Corp., 523 So.2d 1042, 1047-63 (Ala.1988), which I wrote as an opinion for the Court, but converted into a dissent when I could not obtain the necessary votes for that opinion to carry. Even when researching in preparation for writing Tatum, I was blinded to the fundamental law of the Constitution by the paradigm of the words of § 6-5-410, as interpreted in South & North Alabama R.R. v. Sullivan, Adm'r, 59 Ala. 272, 279-80 (1877) ("[what is now § 6-5-410] creates the righta right unknown to the common lawand provides a remedy," and "[n]o other remedy can be pursued"), which was predicated upon Lord Ellenborough's dictum in Baker v. Bolton, 1 Campbell 493, 170 Eng.Reprint 1033 (1803) ("[i]n a civil Court, the death of a human being could not be complained of as an injury"). Regardless of our feeble attempt to interpret § 6-5-410 in the light of imagined common law rights and remedies, there is a constitutional right to life; there is a constitutional right to a remedy for a wrongful deprivation of the right to life. The common law is the law of this State only "as it is not inconsistent with the Constitution, laws and institutions of this State." Ala. Code 1975, § 1-3-1. In my opinion, in Alabama it is unconstitutional for the legislature or the judiciary (and I believe that the fault lies exclusively with the judiciary, Tatum, 523 So.2d at 1050-52, 1059-61) to deny the right to compensation for the wrongful death of a person. Constitution, Art. I, §§ 1 and 13.
I am a strong believer that if a person's right is diminished or destroyed as a result of the wrongful act, omission, or negligence of another, the person or the person's estate is entitled to full compensation for all damages proximately caused by such wrongful act, omission, or negligence. Tatum, 523 So.2d at 1048. The *560 right of the injured party to full compensation must be paramount. Forty-nine other states allow compensation for wrongful death. There are adequate means for a jury or a court to determine the full compensation for death. See, S. Speiser, Recovery for Wrongful Death (2d ed. 1975), (ch. 3, "Damages").
The Fourteenth Amendment constitutional challenge to the judicial interpretation of the Alabama Wrongful Death Act was preserved in this case. Therefore, we are confronted with the question whether, in wrongful death actions in Alabama, the standard of proof and the jury instruction relating to that standard of proof are consistent with the procedural due process guaranteed by the Fourteenth Amendment. I think that they are not.
Given the present inclination of the Supreme Court of the United States to address the subject of punitive damages, should the Supreme Court of Alabama do nothing now and be told what to do later? I think not. There is an old Barbour County adage: "I'd as soon be hanged for a goat as a sheep."[2]
I previously expressed my concern about the constitutionality of the judicial interpretation of our wrongful death act when this Court was not directly confronted with a substantial wrongful death award. See Tatum v. Schering Corp., 523 So.2d 1042, 1062-63 (Ala.1988) (Houston, J., dissenting).
A commentator has correctly described the interpretation given our wrongful death act by a majority of this Court:
"In Alabama an action for wrongful death, if successful, results in an award of punitive damages only. For this reason, the plaintiff may not argue, nor may the jury consider, evidence tending to show that the decedent had an expected lifetime income of any particular amount; that the decedent was exceptionally healthy or sickly; that the death caused someone to incur the expenses of an autopsy, a funeral, and a burial; that lost spousal, parental, or filial consortium had any value; or any other aspect of the decedent's life to which a value might be attached. Rather, the award serves only to further the avowed purposes of punitive damages generallypunishing the defendant, affording a measure of retribution, and deterring others from engaging in conduct similar to that which brought about the decedent's demise. In that sense, the plaintiff acts as the agent of the State, a private district attorney, to vindicate an interest of society and to seek retribution for a harm done to the people. Further, the plaintiff cannot seek, in any measure, compensation for the family or the estate of the decedent. Thus, any award received by the estate is fortuitously compensatory, not intended or designed to be that way. Because only society's interests are sought to be vindicated in wrongful death actions, and because the victim's estate has no right to be compensated for its loss, the assumption that society reaps the benefit of the jury's award is theoretically sound."
L. King, On Civil Punishment and Tort Reform in Alabama, 20 Cumb.L.Rev. 47, 49-51 (1989) (emphasis original).
The United States Supreme Court requires that the standard of proof in a civil action, and the jury instructions relating to that standard, must be consistent with the procedural due process guaranty of the Fourteenth Amendment. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The United States Supreme Court measures the adequacy of a given civil procedural rule by balancing three factors: (1) how the existing procedures affect the private interests involved; (2) how likely it is that the existing procedures will result in erroneous decisions; and (3) how great the government's interests in the existing procedure are and the burden of administering an alternative procedure. Mathews v. Eldridge, 424 U.S. *561 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).
I believe that punitive damages are not to compensate a victim for loss but to punish and deter. In considering punitive damages, there is no "amount" to which an uncompensated victim is entitled; and, therefore, there is no need for giving anyone maximum assurance that a certain amount will be recovered. When considering punitive damages, the defendant's right to fair punishment must be paramount. Wilson v. Dukona Corp., 547 So.2d 70 (Ala.1989).
Using the Mathews v. Eldridge factors, I must conclude that the interpretation given § 6-5-410 by the majority of this Court does not afford a defendant procedural due process, for the following reasons:
(1) If society is the true party plaintiff in wrongful death actions, there is no private interest involved with respect to the plaintiffonly a public interest. See, Maryland Casualty Co. v. Tiffin, 537 So.2d 469, 471 (Ala.1988).
"`[T]he plaintiff is without legal right to [punitive damages], as that right attaches to actual damages suffered. Comer v. Age-Herald Pub. Co., 151 Ala. 613, 44 So. 673, 13 L.R.A. (N.S.) 525 [1907]. Such damages [punitive] may be even forbidden, or affirmatively withheld, by legislative enactment, so far as impinging rights of property are concerned.'"

Dowling, Adm'r v. Garner, 195 Ala. 493, 496, 70 So. 150, 151-52 (1915), quoting Louisville & N.R.R. v. Street, 164 Ala. 155, 51 So. 306, 20 Am.Cas. 877 (1909). (Emphasis added.) See Maryland Casualty Co. v. Tiffin, 537 So.2d at 471. The only private interest, therefore, is that of the defendant. Two of the defendant's property interestsfinancial and reputational are at stake. If found guilty, the defendant pays a judgment, not to compensate a victim, but to punish the defendant and to deter the defendant and others from committing the negligent or wanton act or omitting the act.
In Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812, 837 (Ala. 1988), the majority of this Court held:
"Although not imposing the stigma of crime or the unique burdens of imprisonment, punitive damages nonetheless serve to place the defendant on notice that it has engaged in conduct considered intolerable by society...." (Emphasis added.)
Because the defendant has so much at stake and because, as the majority of this Court has interpreted the wrongful death statute, the plaintiff has nothing at stake (even though I think that the plaintiff has a constitutional right to recover compensatory damages), the first factor of the due process analysis weighs totally in favor of the defendant.
(2) How likely is it that the existing procedures will result in erroneous decisions?
Punishment is based upon a mere preponderance of the evidence. "Preponderance of evidence" as a standard of proof in a civil case means "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." Black's Law Dictionary 1182 (6th ed. 1990). It has been argued that this low standard of proof encourages punishment for what is often minimal culpability without impressing on the minds of the jurors the gravity of their verdict. Nettles and Latta, Alabama's Wrongful Death Statute: A Problematic Existence, 40 Ala.L.Rev. 475, n. 12, at 497-507 (1989).
From examining those cases in which closing arguments are included in the record, my observation from the bench has been that the most substantial verdicts in wrongful death cases are recovered in cases in which the plaintiffs' attorneys, during the closing argument, stress variations on the themes of "responsibility" and "opportunity." In effect, the jurors are told that they are responsible for eradicating negligent, or wanton, or willful homicide and that they more than anyone else have the opportunity to do so by pinching *562 the defendant's pocketbook nerve with sufficient force. The wrong stressed in such arguments is the death rather than the culpability of the defendant or defendants in causing the death.
The jury is then instructed by the trial court that the amount of damages should be directly related to the amount of wrongdoing on the part of the defendant, Alabama Pattern Jury InstructionsCivil, 11.18, p. 161. However, if the wrongful act or omission of more than one defendant combined to proximately cause the death, the jury is instructed that it cannot apportion the damages according to the wrong of each defendant. Black Belt Wood Co. v. Sessions, 514 So.2d 1249, 1267 (Ala.1986); Tatum v. Schering Corp., 523 So.2d at 1048-49.
It has been extremely difficult for me as an appellate judge to apply the factors set out in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), in wrongful death cases. See Olympia Spa v. Johnson, 547 So.2d 80 (Ala.1989) (Houston, J., concurring specially, pp. 88-90). And it appears that in wrongful death cases we, as an appellate court, have recently abandoned the Green Oil factors and with Delphian efficacy have excised sizable portions of wrongful death jury verdicts, even though the act that we have held created the right of action for wrongful death allowed "such damages as the jury may assess." Burlington Northern R.R. v. Whitt, 575 So.2d 1011 (Ala. 1990). This is a power reserved only by a court of last resort.
Be that as it may, at best this factor in the due process analysis is evenly weighed between the plaintiff and the defendant.
(3) How great is the State's interest in the existing procedures and what is the burden of administering alternative procedures?
"The State is parens patriae to all its citizens, a benevolent supervisor of all society. Paramount in the State's interests must be that its citizens are treated fairly by the laws to which they are subject. This concern is perhaps especially compelling when the State is using the law to vindicate the greater interests of society at the expense of a single member, such as in the prosecution of a crime or, in the pertinent context, the prosecution of a civil wrongful death action. The touchstone of any law must be fairness, and fairness obviously embraces just results in prosecutions by the State. As for the burden of alternative procedures on the State, a change in existing procedures would cost little more than the fees associated with printing supplements to various legal texts and form books. Such cost is minuscule in comparison to the potential benefits of the change."
L. King, On Civil Punishment, 20 Cumb. L.Rev. at 53-54.
I agree with Mr. King. This final consideration in the due process analysis weighs in favor of the defendant. In my opinion, this Court erred in determining what damages were recoverable under what is now § 6-5-410 in Savannah & Memphis R.R. v. Shearer, 58 Ala. 672 (1877), and in South & North Alabama R.R. v. Sullivan, Adm'r, 59 Ala. 272 (1877). This has caused us to deny recovery for death in some cases in which one could have recovered if the wrongful act that caused death had, instead, caused only a personal injury. See Carter v. City of Birmingham, 444 So.2d 373 (Ala.1983), cert. denied, 467 U.S. 1211, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984); Slagle v. Parker, 370 So.2d 947 (Ala. 1979). Stare decisis, in wrongful death cases, is deadlocked as in no other area of the law in Alabama by our insistence in allowing only punitive damages for wrongful death. We have failed to recognize the constitutional right to a remedy for a deprivation of the constitutional right to life.
The State must be interested in enforcing its constitutional provisions. Sections 1 and 13 of the Constitution assure citizens of this State a right to be compensated for a wrongful deprivation of the right to live. The State must make certain that this right is not abridged by the judiciary or any other branch of government. Therefore, the State's interest is great in assuring that the erroneous judicial interpretation of *563 what damages can be recovered in an action for wrongful death is corrected, and the State has a responsibility, rather than a burden, to assure that these constitutional provisions are enforced. These constitutional provisions are not being enforced by the way the majority of this Court has interpreted what damages can be recovered for wrongful death.
Therefore, under the prevailing analytical framework for procedural due process, the judicial interpretation of § 6-5-410, insofar as it permits only punitive damages upon proof by a preponderance of the evidence, fails to provide procedural due process.
In this case, although the jury found that Alabama Power Company was negligent, it specifically found that Alabama Power Company was not wanton; therefore, I would reverse and remand for a jury to determine only the full compensatory value of Mr. Turner's life. See S. Speiser, Recovery for Wrongful Death (2d ed. 1975) (ch. 3, "Damages").
NOTES
[*] Although Justice Maddox did not sit at oral argument, he has studied the record and listened to the tapes of oral argument.
[1] The preambles to the Alabama Constitutions of 1819 and 1865, but not the Constitution of 1861, referred to the right "of" life, but did not in the "Declaration of Rights" declare that there was a right to life.
[2] In spite of this, or perhaps because of this, Barbour County, with a population of approximately 25,000 people, has produced more governors than any other county in the State of Alabama.