Plaintiff-Appellant Merrell, as Administratrix of the estate of Richard G. Ross, filed a wrongful death action against Alabama Power Company. Ross was piloting a small single engine airplane during inclement weather when he collided with a power line owned and maintained by the power company. The power line was located three nautical miles from the end of the runway at Bates Field in Mobile, within the area designated as the instrument approach zone. Ross died within a half hour of the collision. Merrell alleges that the power company negligently failed to mark the power line and to warn of the location and presence of the line. In her complaint, Merrell expressly disclaims any claim for punitive damages, and seeks to recover compensatory damages only. Two counts of the action are allegedly brought under Code 1975, § 6-5-410, Alabama's wrongful death statute; one count is allegedly brought under the "common law of England as controlling and applicable in the State of Alabama." The power company's motion to dismiss the complaint was granted, and Merrell appealed.
On appeal, Merrell contends that:
This Court's construction of our wrongful death statute as permitting recovery of only punitive damages is unconstitutional. It is against public policy as expressed in the common law of England to punish negligence. Even if such an interpretation was justified under the original wrongful death statute, which was entitled "An Act to Prevent Homicides," and was indexed under "Criminal Law," the legislature manifested its disapproval of this interpretation by making substantial changes in the act in the Code of 1886, and indexing it under "Proceedings in Civil Cases." This Court should correct its previous erroneous judicial interpretations and construe the existing act to provide for the assessment and recovery of compensatory damages, and punitive damages if the negligent act or omission causing death constitutes malicious, willful, wanton or reckless conduct. Code 1975, § 6-5-410, should be construed to be a statute which provides for both loss to survivors and loss to the estate. English and Alabama cases holding that no cause of action for wrongful death existed at common law are in error. This Court should allow a decedent's personal representative to recover for the injured person's own personal injuries and expenses incurred, which recovery should be subject to the payment of the debts and liabilities of the decedent, and allow the survivors to recover for their own benefit their loss and damages sustained as a result of the negligent act causing death. *Page 496 
We affirm. More than one hundred years ago, this Court held that the wrongful death statute as passed by the Alabama legislature in 1872 allowed the recovery of punitive damages only. In Savannah Memphis Railroad Co. v. Shearer, Adm'x,58 Ala. 672 (1877), the Court stated:
 "Lacerated feelings of surviving relations, and mere capacity of deceased to make money if permitted to live, do not constitute the measure of recovery under the act of Feb. 5, 1872. Prevention of homicide is the purpose of the statute, and this it proposes to accomplish by such pecuniary mulct as the jury `deem just.' The damages are punitive, and they are none the less so, in consequence of the direction the statute gives to the damages when recovered. They are assessed against the railroad `to prevent homicides.'"
Later that same year, the Court stated in The South and NorthAlabama Railroad Company v. Sullivan, Adm'r, 59 Ala. 272
(1877):
 "Commenting on the act `to prevent homicides,' of February 5, 1872, Pamph. Acts 83, we, in Savannah and Memphis Railroad Company v. Shearer, said, in effect, that the purpose and result of the suit therein provided were not a mere solatium to the wounded feelings of surviving relations, nor compensation for the lost earnings of the slain. We think the statute has a wider aim and scope. It is punitive in its purposes. Punitive of the person or corporation by which the wrong is done, to stimulate diligence and to check violence, in order thereby to give greater security to human life; `to prevent homicides.' And it is none the less punitive because of the direction the statute gives to the damages recovered. The damages, `tis true, go to the estate of the party slain, and, in effect, are compensatory; but this does not change the great purpose of the statute — `to prevent homicides.' Preservation of life — prevention of its destruction by the wrongful acts or omission of another, — is the subject of the statute; and all its provisions are but machinery for carrying it into effect.
. . . . .
 ". . . The statute creates the right — a right unknown to the common law — and provides a remedy. No other remedy can be pursued."
In Richmond and Danville Railroad Company v. Freeman, 97 Ala. 289,11 So. 800 (1892), the Court's interpretation of the act of 1872 was challenged. There the plaintiff, as in this case, urged the Court to reconsider its holdings that only punitive damages were recoverable under the statute. In rejecting that argument, the Court, speaking through Justice McClellan, said:
 "The objection taken on constitutional grounds to the statute as it has been construed by this court seemed to us to be without merit. It is as clearly within legislative competency, of course, to punish negligence as it is to punish wantonness, willfulness or intentional wrong doing. It is not controverted at all that the common-law doctrine by which the imposition of punishment through a recovery at the suit of an individual of exemplary damages for wanton, willful or intentional misconduct is allowed, is well within organic limitations; and we conceive no basis for the distinction between the power to punish in this way for negligence and such power in respect of wantonness and the like when brought to the touch of constitutional guarantee intended to secure to the citizen certain rights as to the proceedings necessary to his arrest, arraignment, conviction and punishment for a violation of criminal law.
 "The act of 1872 having been, without modification in any material sense, twice re-enacted since the judicial construction we have been considering was put upon it — in the Code 1876 and again in the Code 1886 — and being with that construction a constitutional exercise of the legislative power, it is now to be considered as if the terms and provisions, which have been evolved out of it and declared in concrete form by judicial interpretation, were expressly embodied in its letter. This, we think, should close the door to *Page 497 
the overruling of the cases which put that construction on it, and to the adoption of a different one. This is the consideration which mainly moves the writer to a reaffirmation of the doctrine — declared in the cases of Shearer, Sullivan and King, [Railroad Co. v. King, 81 Ala. 177, 2 So. 152]
 supra; the question, in his opinion, is no longer an open one. If it were, he should be much inclined to the view so ably urged by counsel, that the statute was primarily intended to afford compensation to the next of kin of a person coming to his death through the wrong of another, and to allow the imposition of punitive damages only in those cases where they would have been recoverable had the injury fallen short of death. He is disposed to think that a too far reaching influence was accorded to the title of the act; and if this case were here upon first impression, he would be strongly inclined to rule that the legislative intent was to prevent homicides by giving an action for fatal injuries as to which no right of action existed before where the next of kin of the slain were in fact losers by his death, the recovery to be tolled by their loss unless the circumstances of the wrongful act warranted the imposition of additional damages as a punishment under well-established common-law principles. It is manifest that this construction would conserve the expressed legislative purpose, `to prevent homicides,' since it attached a new and previously non-existing liability to all wrongful acts producing death; would be more in harmony with general legal theories and precedents, and give [what] the writer conceives to be, a more reasonable field for the operation of the limitation of the right of action to cases in which the deceased might have recovered had the injury not been fatal. It would seem too, that this view should find some support in the provision giving direction to the sum recovered; and certainly it is strongly supported by that clause of the statute which provides that `the action shall not abate by the death of the defendant but may be revived against his personal represesentatives [sic],' since in such case, there could be no punishment of the wrong doer but only of wholly innocent successors to his estate; and the whole policy of our laws, as of every civilized system of jurisprudence, is utterly at war with the idea of vicarious punishment, while the policy of enforcing compensation for wrongs done out of the estate of a deceased wrong doer is not opposed to any abstract notion of justice or to the practices of any theory of government. But be all that as it may, the legislature had the power to enact a law such as this one is with the construction this court has given it. They have in effect done so here by the re-enactment of this statute after its construction; and it now only remains for the courts to enforce it as thus constructed and re-enacted." (97 Ala. at 295-297, 11 So. 802-803.)
After so many years, we cannot improve on the language or reasoning of Justice McClellan. We, as the Court did in 1892, fail to find any constitutional infirmity in the death statute as written by the legislature and construed by this Court. The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.
 ON APPLICATION FOR REHEARING