607 So.2d 1241 (1992)
Barbara Bryant KING, as Administratrix of the Estate of Kenneth A. Halpern, Deceased
v.
NATIONAL SPA AND POOL INSTITUTE, INC., et al.
1910620.
Supreme Court of Alabama.
September 4, 1992.
As Modified on Denial of Rehearing October 16, 1992.
Jere L. Beasley and Kenneth J. Mendelsohn of Beasley," Wilson, Allen, Mendelsohn, Jemison & James, P.C., Montgomery, for appellant Barbara Bryant King.
Geary A. Gaston and William W. Watts III of Reams, Philips, Brooks, Schell, Gaston & Hudson, P.C., Mobile, for appellee National Spa and Pool Institute, Inc.
Douglas L. Brown and William Austin Mulherin III of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for appellee Spartan-Aqualon Corp.
Peter V. Sintz and William A. Mudd of Sintz, Campbell, Duke & Taylor, Mobile, for appellees S.R. Smith and S.R. Smith Co., Inc.
HORNSBY, Chief Justice.
This is the third appeal of this case. In each of the earlier appeals, this Court reversed a summary judgment for one of the defendants. King v. National Spa & Pool *1242 Institute, Inc., 570 So.2d 612 (Ala.1990); King v. S.R. Smith, Inc., 578 So.2d 1285 (Ala.1991). This appeal presents the issue whether Kingthe mother of the original plaintiff, Kenneth Halpern, and his properly substituted personal representative could amend the original complaint alleging personal injury to add a wrongful death claim after Halpern died from injuries alleged in the complaint. This issue requires this Court to review the law of abatement most recently applied in Elam v. Illinois Central Gulf R.R., 496 So.2d 740 (Ala. 1986). We reverse and remand the cause for further proceedings.
The underlying facts were set out in the first appeal of this case as follows:
"In the fall of 1987, Ms. King's intestate [Halpern] purchased a house and a lot in Mobile, Alabama. There was an in-ground, vinyl-lined swimming pool that had been constructed in 1981 by Southern Leisure Pool and Supply Corporation (`Southern Leisure'), a defendant not involved in this appeal. The evidence before the trial court showed that the swimming pool met the trade association's [NSPI's] `Suggested Minimum Standards for Residential Swimming Pools' (`standards') and was of the size, shape, and dimensions that the trade association prescribed for allowing the type of diving board that had been installed with the pool. In May 1988, Ms. King's intestate dove into the pool from the diving board. He did not slip, trip, or otherwise go into the pool unintentionally. It can reasonably be inferred that Ms. King's intestate hit his head on the bottom or side of the pool and sustained a broken neck and permanent quadriplegia. Approximately eight and one-half months later, he died of pneumonia secondary to quadriplegia."
570 So.2d at 613.
After Halpern's death, King was substituted as his personal representative. King then amended the original complaint to add a wrongful death claim under Ala.Code 1975, § 6-5-410, against all defendants. The case continued in litigation for more than two years after this amendment, with discovery, settlement with other defendants, and the appeals noted above proceeding in the usual manner. The defendants now in the case are National Spa and Pool Institute, Inc. (NSPI), S.R. Smith, Inc., and Spartan-Aqualon Corporation. Of particular note in the litigation process were various admissions among the parties during November 1991, that established that the injuries Halpern sustained in the swimming pool accident proximately caused his death.
In January 1992, the defendants again moved for a summary judgment. For the first time, the defendants argued that the original personal injury action had abated upon Halpern's death. In its order of January 22, 1992, the trial court held that Halpern's death extinguished his original complaint so that the action did not survive in favor of King. The trial court held that King's sole remedy was by the wrongful death statute. Further, the trial court ruled that under Elam, supra, King was required to file a new and separate complaint alleging wrongful death. Accordingly, the trial court entered a summary judgment for the defendants.
In this case, given the rule in Elam, King has no recourse to the wrongful death statute, Ala.Code 1975, § 6-5-410. Halpern died on February 10, 1989. The two-year limitations period for a wrongful death claim had expired nearly one year before the trial court entered the summary judgment. The effect of the rule in Elam is to prevent King from making any further claim on behalf of her son.
We recognize that the trial court properly applied the rule in Elam stemming from the old common law rules of pleading and abatement. We must determine, however, whether those rules should continue to be the law in this state.

The Elam Case and Its Predecessors
In Elam, the original plaintiff sued the defendant railroad based on personal injuries; the plaintiff later died as a result of those injuries. The plaintiff's daughter, Elam, as personal representative, was substituted as plaintiff; she amended the complaint to add a wrongful death claim. The *1243 trial court ruled that Elam was prosecuting two separate wrongful death actions at the same time and dismissed Elam's second action. On appeal the Court answered "yes" to the following question:
"Does the death of a sole plaintiff in a tort action for personal injury extinguish that action, so that any further prosecution must be by a new and separate action for wrongful death filed by the representative of the deceased plaintiff's estate?"
496 So.2d at 741-42.
The holding in Elam relies on the older case of Parker v. Fies & Sons, 243 Ala. 348, 10 So.2d 13 (1942).[1]Parker supports the rule in Elam. In Parker, the administratrix sought, after the original plaintiff's death, to be substituted as plaintiff and to amend the original personal injury complaint to include a claim under the Homicide Act. The Homicide Act is the predecessor to Ala.Code 1975, § 6-5-410. The Court in Parker held specifically that the administratrix could not amend the original personal injury action to add a claim under the Homicide Act.
In reaching its holding, the Court in Parker relied on the analysis of the Homicide Act and the statute providing for survival of personal injury actions set out in two older cases, Bruce v. Collier, 221 Ala. 22, 127 So. 553 (1930), and Ex Parte Adams, 216 Ala. 241, 113 So. 235 (1927), overruled, see discussion infra. The survival statute referenced in Bruce and Adams was the predecessor to Ala.Code 1975, § 6-5-462. That statute provided, as does § 6-5-462, that personal claims on which an action had been filed would survive in favor or the personal representative, except for claims involving injuries to the reputation. These survival statutes do not reference the Homicide Act or the present Wrongful Death Act.
Parker, Bruce, and Adams all agreed as to the meaning and application of the Homicide Act:
"Our homicide act is a death statute, a punitive statute to prevent homicides. It creates a new and distinct cause of action, unknown at common law. The cause of action comes into being only upon death from wrongful act."
Parker, supra, 243 Ala. at 350, 10 So.2d at 15. This discussion applies equally well to the present Wrongful Death Act, Ala.Code 1975, § 6-5-410, and that Act remains the sole right of action for death under our law. Black Belt Wood Co. v. Sessions, 514 So.2d 1249 (Ala.1986); Mattison v. Kirk, 497 So.2d 120 (Ala.1986).
In examining the basis of Parker and its application of the Homicide Act in the context of the survival statute, we turn first to the decision in Adams. The Court in Adams considered a plea in abatement under common law rules of pleading. The original complaint alleged unlawful arrest and imprisonment, and a later complaint by the administrator stated a claim under the Homicide Act based on the allegation that the injury inflicted by the unlawful arrest resulted in the original plaintiff's death. The Court in Adams began its consideration from the standpoint of strict construction of pleadings under common law and Ala.Code 1923, § 5657. That section disallowed the maintenance of two actions at the same time by the same party on the same cause of action.
The Adams Court reasoned that because the original plaintiff and her later administrator had a common interest and were asserting claims, first personal injury and then homicide, against the same party based on the same alleged wrongful acts, the two actions were identical for the purposes of the statute. The Court held, therefore, that the pendency of the first suit was a defense against the prosecution of the second suit based on the Homicide Act. Accordingly, the Court ruled that the plea in abatement supported the dismissal of the later suit. Essentially, the court in Adams held that an action based on personal *1244 injury that resulted in death was the same cause of action that underlay an action under the Homicide Act. The Court's rationale was that both the personal injury action and the Homicide Act action were based on the same tortious act.
The idea that the cause of action was the same, first expressed in Adams, was a key consideration in Bruce. In Bruce, the Court considered the crucial question:
"Does an action for personal injuries, begun by the decedent while in life, survive to his personal representative if death results from the same tort, giving rise to an action under the homicide act?"
221 Ala. at 23, 127 So. at 554. Given the analysis of the Homicide Act in Adams, the Court noted that (1) originally at common law, and even in early statutes providing for survival of some actions, actions for personal injury did not survive the death of the plaintiff; and (2) the legislature later amended the survival statute to allow for survival of personal injury actions.
The Court in Bruce noted that the Homicide Act was in effect before the survival statute was amended to permit survival of personal injury actions. The Court reasoned that the amended survival statute, allowing the survival of personal injury actions, has application only outside the Homicide Act, because:
"Two actions by the same administrator against the same defendant for the same tort, prosecuted to separate judgments, would present a situation so unusual and extraordinary that clear legislative intent should appear."
Id. Although there was no explicit statement by the legislature that every action for personal injury would abate, the Court in Bruce determined that the legislature did not intend to allow both an action under the Homicide Act and the survival of a personal injury action based on the same tort. The gist of this holding is that a personal injury action survives the death of the plaintiff if and only if the death resulted from some cause other than the injury sued upon.
Plainly underlying the Court's analysis is the idea from Adams that the homicide action is essentially the same action as the personal injury action where the injury sued upon caused the plaintiff's death. However, the Court in Bruce goes on to note various differences in the two actions, including differences in the nature of the damages and in the beneficiaries. That is, the Court appeared to recognize that the estate would be the beneficiary of compensatory damages in a personal injury action, whereas the heirs were the beneficiaries of solely punitive damages in a Homicide Act claim.
The Parker Court expressed the holding in Bruce as follows:
"The statute providing for survival of actions for `injuries to the person' does not apply to actions for injuries from wrongful act resulting in death, with a consequent right of action under the homicide act. The survival statue has a field of operation in actions where death ensues from other causes. The lawmakers did not contemplate two actions by the same administrator against the same defendant for the same tort, prosecuted to separate judgments, one to recover for personal injuries for the benefit of the estate, and another for punitive damages for the benefit of the next of kin."
243 Ala. at 349, 10 So.2d at 14. In effect, the Court in Parker reaffirmed the Court's determination in Bruce of legislative intent.
However, the Court in Parker was considering whether an amendment after the original plaintiff's death adding a Homicide Act claim was effective in light of Alabama's amendment statute, Ala.Code 1940, Title 7, § 239. That statute provided for liberal amendment of complaints where new or other causes of action referred to the same transaction. Under the rationale of Adams, supra, the appellant in Parker argued that the Homicide Act claim arose from the "same transaction," and therefore that the amendment was permitted under the amendment act. The Court in Parker extended the discussion in Bruce with respect to the differences between the personal *1245 injury claim and the Homicide Act claim to overrule the Adams analysis concluding that the two actions were the same. Accordingly, Adams could not serve as precedent supporting the amendment in Parker.
One result of Parker was a recognition that a personal injury action based on a tort that later causes the plaintiff's death was a distinct cause of action for a Homicide Act claim based on the same tort. However, the Court in Parker adhered to the rule in Bruce that, because of the similarity of the actions, the legislature intended that a claim under the Homicide Act would extinguish a personal injury action based on the same injury. That is, because of the Parker Court's view of the legislature's intent, the survival statute did not operate with respect to personal injury actions based on the same tort that resulted in the plaintiff's death.
In neither Bruce nor Parker did the Court find any legislative intent that supported the limitation placed on the plain language of the survival statute. No reference to legislative history or debate is made in the Court's interpretation. Rather, the Court's determination of legislative intent appears to be based solely on its interpretation of the stringent rules of common law pleading then applicable. These common law rules of pleading were codified in part over time, so that "code pleading" often prescribed the practice. The "cause of action" was the basis of the "action," the legal proceeding by which one got relief, and an important rule of the pleading practice of that day was that a new cause of action could not be added to a complaint by amendment. Spurling v. Fillingim, 244 Ala. 172, 12 So.2d 740 (1943); Stramler v. Holman, 234 Ala. 36, 173 So. 377 (1937). See generally, Bliss on Code Pleading Chapter XV (2d ed. 1887).
Despite the plain language of the survival statute, having a cause of action for personal injury and a cause of action under the Homicide Act arising from the same tort was plainly "duplicitous" or "misjoinder of causes" under well-established common law and "code" rules. Bliss, supra. Within the context of these rules, and the Parker and Bruce interpretation that the survival statute allowed only one cause of action to arise from a tort causing death, it naturally followed that an amendment substituting a wrongful death claim for an originally asserted personal injury claim violated the prohibition against "misjoinder of causes" as well as "misjoinder of parties."
Of course, the Alabama Rules of Civil Procedure, specifically Ala.R.Civ.P. 15, long ago supplanted those rules of pleading based on common law practice. Rule 15 provides for a much more liberal amendment practice, including the provision that amendments "shall be freely allowed when justice so requires." Ala.R.Civ.P. 15(a). As the Committee Comments to Rule 15 specify:
"Under Rule 15(a) and (b) the test as to whether amendment is proper will be functional, rather than, as under present Alabama law, conceptual. Under the rule it will be entirely irrelevant that a proposed amendment changes the cause of action or the theory of the case or that it states a claim arising out of a transaction different from that originally sued on or that it caused a change in parties."
The comments to Rule 15 further indicate that an amendment should be disallowed only if it would cause actual prejudice to a party. Finally, the comments state that "Alabama decisions which took a more restrictive view of what constitutes a `cause of action' will no longer be authoritative."

The Rule of Parker and Bruce Today
Although the Courts in Parker and Bruce viewed the survival statute and the Homicide Act in the context of the practice and pleading of that day, we are bound to review the successors to those statutes in the context of practice and pleading rules that have governed our system for nearly 20 years. Further, we recognize, as did the Courts in Parker and Bruce, that a wrongful death claim is separate and distinct from a personal injury claim, even when the injury results in the death of the plaintiff. Finally, we begin the examination of any statute with this principle in mind:

*1246 "[T]he meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms.
"Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meaning need no discussion."
Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).
When the context of common law and "code" pleading practice that overshadowed the decisions in Parker and Bruce is removed, as it is for this Court today, we find no basis for limiting the plain meaning of Ala.Code 1975, § 6-5-462. As will be discussed infra, allowing this statute to mean what it says fits with both our constitutional provisions and the policy of tort law that has long controlled our system. Accordingly, we overrule the rule in Bruce that an action for personal injuries that results in the death of the plaintiff is extinguished on the death of the plaintiff.
Specifically, we hold that the survival statute, Ala.Code 1975, § 6-5-462, means exactly what its plain language states, that "all personal claims upon which an action has been filed ... survive in favor of and against personal representatives...." (Emphasis supplied.) The fact that the injury that serves as the basis for the personal injury action later gives rise to a wrongful death claim does not extinguish the original personal injury claim.
This means that the holdings in Elam, Mattison, and Parker, supra, and Carroll v. Florala Memorial Hospital, Inc., 288 Ala. 118, 257 So.2d 837 (1972), are also overruled to the extent that those holdings relied on the rule that a personal injury action does not survive the plaintiff's death if a wrongful death claim could be based on the same injury. The rule that a plaintiff substituted for a deceased plaintiff must file an entirely new complaint in order to recover for wrongful death is therefore no longer the law. Should the plaintiff die as a result of the injuries alleged in the original personal injury suit, the properly substituted personal representative may amend the original complaint to add a wrongful death claim.
The law in the case before us and in all similar cases pending at the time of this decision is that the original personal injury action survives the death of the plaintiff just as if the injury had not caused the death. Under the Alabama Rules of Civil Procedure, the plaintiff can, and should be allowed to, present both the personal injury claim and the wrongful death claim to the finder of fact.
In addition to our interpretation of legislative intent within the context of modern pleading and practice and the plain meaning of Ala.Code 1975, § 6-5-462, our holding that the wrongful death statute does not limit the survival statute rests on two other bases. First, our cases have long recognized that the common law rule that death ended the decedent's ability to sue and be sued is not the law in our state. The clearest example that death is no longer a bar as it was at common law is the survival statute discussed above. See also Ex Parte Holsonback, 236 Ala. 265,182 So. 28 (1938); King v. Pearce, 14 Ala.App. 628, 71 So. 656 (1916). As noted earlier, a wrongful death claim for punitive damages payable to the heirs is not the same action as a personal injury claim for compensation based on injuries that cause death.
As with its predecessor, the Homicide Act, the Wrongful Death Act provides only for punitive damages, and compensation is not a factor in a wrongful death claim. Barnes v. Oswalt, 579 So.2d 1319 (Ala.1991); Brown v. Morgan County, 518 F.Supp. 661 (N.D.Ala.1981). The policy of the Wrongful Death Act is solely to protect human life by deterring tortious acts that result in death and to impose civil punishment on those who take human life. Black Belt Wood Co., supra. Justice Houston's dissent in Tatum v. Schering Corp., 523 So.2d 1042 (Ala.1988), is perhaps the most complete discussion of the history and policy of the Wrongful Death Act in our precedent. *1247 That dissent discusses in detail the "punitive only" nature of the Wrongful Death Act and presents strong, if unsuccessful, arguments against it.
This opinion need not confront the long years of precedent holding that the Wrongful Death Act is the sole, and "punitive only," remedy for tortious infliction of death in this state. Recognition of the precedent noted by Justice Houston in Tatum does emphasize, however, that the Wrongful Death Act is not, and was never intended to be, a source of compensation for tortiously caused personal injuries that later result in death. The Wrongful Death Act does not address the claim for compensation for personal injuries presented by a decedent's personal representative where the injuries cause death.
The interpretation of legislative intent in Brucethat the personal injury action does not survive because of the Homicide Actmeans that the decedent's personal representative has no remedy for the tortious acts of the defendant that caused the injury. This interpretation of legislative intent does not fit with Ala. Const. of 1901, Art. I, § 13, providing that every person shall have a remedy for any injury done him. Plainly, the wrongful death action is not a remedy for the personal injuries to a decedent that later result in his or her death. Rather, it is a remedy for the infliction of death only. Without attempting a detailed analysis that equates a decedent with the personal representative of the decedent's estate, we note simply that survival of a personal injury claim where the injury sued upon has resulted in death comports with the letter and spirit of Ala. Const. Art. I, § 13.
Second, we note that the settled policy of our system of tort law is to place the responsibility for compensation for an injury on the party that proximately causes the injury. Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala.1983); Matheny v. Petersen, 276 Ala. 478, 163 So.2d 635 (1964). The interpretation of legislative intent set out in Brucethat there is no right to compensation for personal injury against a wrongdoer who causes deathis directly contrary to that policy of tort law. A wrongful death claim does not provide compensation for injuries that cause death. Punitive damages are not compensation, and our system should not be contorted to treat them as such.
We are aware that the expenses associated with personal injuries that later cause death can be enormous. The costs of medical treatment, loss of earnings, and other losses and expenses generated by substantial personal injury may have no further impact on the injured party after his or her death. However, those losses and expenses will certainly impact upon the decedent's estate. Under the rule in Bruce, the decedent's estate must bear the burden of the loss and expenses caused by the tortious act of the defendant where that act results in death. Where the decedent's estate cannot bear the loss, or pay the expenses, each member of society must take up his or her share. This is unjust, and the proper solution is to allow our established system of tort law to apply. That is, the solution is to allow survival of the original personal injury action as specified in § 6-5-462.
Although Alabama's law of wrongful death is unique in the United States, the unique nature of a "punitive only" wrongful death statute can no longer extend to the deprivation of a universally recognized right to compensation. This Court is aware of no other jurisdiction in the United States where there is no right to recover for personal injuries that result in death. That is, whether by statute or by judicially recognized tort law, the appropriate party may recover compensation for personal injuries that cause death in every other American jurisdiction. We will no longer stand alone on this point.
We note that our holding here is not at odds with Ex parte King, 591 So.2d 464 (Ala.1991). Although the petitioner in King admitted the abatement rules here overruled, discussion of those rules was not necessary in King. King raised the issue of whether the plaintiff could be required to elect between a surviving personal injury claim and a wrongful death claim *1248 allegedly arising out of the same injury. In King, there was no agreement that the injury in question had caused the death and the personal injury, but the plaintiff was proceeding on both theories. King held that modern pleading and practice allowed the plaintiff to submit two mutually exclusive and inconsistent claims to the factfinder so long as the factfinder awarded damages on only one of the claims. That holding is correct. For example, had the facts in King established that the defendant's tort caused personal injury but did not cause death, it would be inconsistent for the factfinder to award damages for both personal injury and death.
Our holding does not affect precedent with respect to the nature and effect of Alabama's Wrongful Death Act, now Ala. Code 1975, § 6-5-410. That Act remains the sole remedy for the tortious infliction of death in our state, and the damages recoverable under that Act remain solely punitive. To that extent, the holdings in Mattison, Carroll, and Parker remain good law. However, the presence of the Wrongful Death Act no longer operates to extinguish a personal injury claim where the injury results in death. In the instant case, Halpern's original personal injury claim did not abate at the moment of his death, but rather survived to King, his properly substituted personal representative. Because the original complaint did not abate at Halpern's death, King was free to amend it to add a claim alleging wrongful death.
Should this case proceed to trial, King will be able to present both claims to the trier of fact. The estate's personal injury claim for compensatory damages to compensate for expenses and losses incurred up to the moment of death is not mutually exclusive or inconsistent with the heirs' wrongful death claim for punitive damages. That is, should King prove liability, King will be able to recover compensatory damages for Halpern's personal injuries up to the instant of his death. King's claim for damages based on Halpern's personal injuries would be presented exactly as any other claim based on personal injury. Losses and expenses and other compensable items recognized in a personal injury action, such as medical expenses, lost wages, and pain and suffering, would be recoverable by King on behalf of Halpern up to the amount of Halpern's death.
In addition, should King prove liability on the wrongful death claim, she will also be entitled to recover such punitive damages as the jury determines to be appropriate under Alabama's law of wrongful death. Black Belt Wood Co., supra; Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala. 1984). However, because § 6-5-410 remains the sole remedy for the tortious infliction of death in this state, it provides a terminus for any other damages claim that might otherwise extend beyond the instant of death. Because § 6-5-410 provides for punitive damages for the act causing death, it also displaces any claim for punitive damages in the personal injury action based on the same act. Accordingly, King's personal injury claim will provide no recovery for punitive damages, or for any damage or loss, such as lost wages or any other item, that occurred, or might occur, at any time after Halpern's death.
The judgment is therefore reversed, and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur.
ALMON and STEAGALL, JJ., concur in part and dissent in part.
MADDOX and HOUSTON, JJ., dissent.
ALMON, Justice (concurring in part and dissenting in part).
I concur in that portion of the majority opinion reversing the summary judgment for the defendants on the wrongful death claim. I dissent from that opinion insofar as it allows the personal injury action to proceed in spite of the plaintiff's death as a result of the injuries that are the subject of the complaint.
On February 10, 1989, Kenneth Halpern died of complications resulting from injuries he had suffered upon diving into his *1249 backyard pool. On April 12, 1989, Barbara Briant King, Halpern's mother and the administratrix of his estate, was substituted as the plaintiff in the personal injury action that had been filed before Halpern's death. On May 15, 1989, Mrs. King amended the complaint, adding a count seeking damages for wrongful death. This amendment came approximately 3 months after a wrongful death cause of action arose and approximately 21 months before the period of limitations for filing a wrongful death claim would have expired. Ala.Code 1975, § 6-5-410(d). The defendants made successive motions for summary judgment during the proceedings, but did not raise the principle of abatement as stated in Elam v. Illinois Central Gulf R.R., 496 So.2d 740 (Ala. 1986), and Parker v. Fies & Sons, 243 Ala. 348, 10 So.2d 13 (1942), until January 1992, 11 months after the period of limitations for a wrongful death action had run.
The principle that a personal injury action abates when the plaintiff dies from the injuries that are the subject of the claim was enunciated in a carefully reasoned holding, which the Court reached only after considering the various statutes applicable to the situation. The Court stated that principle in Bruce v. Collier, 221 Ala. 22, 127 So. 553 (1930), and Justice Bouldin, writing for a unanimous Court in Parker, reaffirmed the holding of Bruce and summarized the principle as follows:
"The statute providing for survival of actions for `injuries to the person' does not apply to actions for injuries from wrongful act resulting in death, with a consequent right of action under the Homicide Act. The survival statute has a field of operation in actions where death ensues from other causes. The lawmakers did not contemplate two actions by the same administrator against the same defendant for the same tort, prosecuted to separate judgments, one to recover for personal injuries for the benefit of the estate, and another for punitive damages for the benefit of the next of kin."
Parker v. Fies & Sons, 243 Ala. 348, 349, 10 So.2d 13, 14 (1942).
This principle is woven into the law of this State regarding damages, actions alleging personal injuries, and actions alleging wrongful death. At common law, a personal injury action did not survive a plaintiff's death. The survival of such an action was first provided for in the Code of 1907, § 2496; cf. Code 1897, § 35. Therefore, there is no common law or constitutional right to an action by a decedent's estate for damages for personal injuries suffered by the decedent. See, e.g., Gilbreath v. Wallace, 292 Ala. 267, 292 So.2d 651 (1974); Smith v. Smith, 254 Ala. 404, 48 So.2d 546 (1950); Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939). The holding that the legislature, in granting such a right in 1907, did not intend for it to extend to cases where the injuries complained of resulted in death has stood for more than 60 years. I see no reason to change the law now.
The holding of Parker that the complaint in a personal injury action could not be amended to state a wrongful death claim stood on a different basis. The Parker Court held that, because the wrongful death cause of action did not arise until the death, the following principle prohibited the amendment of the personal injury action to include a wrongful death claim: "A cause of action arising after suit brought, or which had not accrued so as to be joined in the original suit, cannot be added by amendment at law." Parker, 243 Ala. at 350, 10 So.2d at 15. This principle, however, no longer exists in our law. See Rule 15(a), Ala.R.Civ.P.
For the foregoing reasons, I would hold as follows: When an injured party who has filed an action for damages for personal injuries dies of the injuries that are the subject of the complaint, the personal injury action abates upon the death of the plaintiff, but the personal representative may amend the complaint within two years after the plaintiff's death to state a wrongful death claim. Such an amendment would be equivalent to filing a separate wrongful death action for purposes of the period of limitations.
STEAGALL, Justice (concurring in part and dissenting in part).
I agree with that portion of the majority opinion holding that a personal injury action *1250 survives the death of a plaintiff if a wrongful death claim could be based on the same injury and that a plaintiff substituted for a decedent no longer must file a new complaint, but may amend the personal injury complaint to add a wrongful death claim. I think that the result of not allowing the amendment, especially under the facts of this case, would be too harsh.
I disagree, however, with that portion of the opinion allowing compensatory damages in the personal injury action in addition to punitive damages in the wrongful death action. I think the entire matter of damages in wrongful death cases should be reexamined, preferably by the Legislature. Accordingly, I respectfully dissent from that portion of the opinion.
MADDOX, Justice (dissenting).
The majority today permits the recovery of both compensatory and punitive damages in a wrongful death action based on a claim of simple negligence of the tort-feasor. The majority overrules Elam v. Illinois Central Gulf R.R., 496 So.2d 740 (Ala.1986), a six-year-old precedent in which six current members of this Court concurred, and, in my opinion, the Court does violence to a common law principle that has been a part of the judicial fabric of this State since its creation. Because I believe that Elam was decided correctly, I must respectfully dissent, but, in dissenting, I point out what I think would be a better solution of the issue presented, that is, that we should re-examine our interpretation of our wrongful death statute that permits only the recovery of punitive damages.
In Elam, this Court held that the death of a plaintiff who has filed a tort action alleging personal injury extinguishes the tort action, and that any claim for recovery based on the death of the plaintiff must be prosecuted in a new action under the applicable wrongful death statute. Elam, 496 So.2d at 741-42. Elam, of course, did not establish a new rule of law. Instead, it followed a line of cases holding that the survival statute (now Ala.Code 1975, § 6-5-462) did not apply in an action alleging personal injury if the plaintiff died as a result of the wrongful act made the basis of the tort suit. See, e.g., Parker v. Fies & Sons, 243 Ala. 348, 350, 10 So.2d 13, 15 (1942). Today's decision overrules each of those cases and also overrules, in part, Mattison v. Kirk, 497 So.2d 120 (Ala.1986), overruled in part by, Carbon Hill Manufacturing, Inc. v. Moore, 602 So.2d 354 (Ala.1992), another six-year-old precedent in which five current members of this Court concurred.[2] In Mattison the Court explained the reason behind the rule discarded today:
"This Court has construed the survival statute and the wrongful death statute, § 6-5-440, in pari materia. Where an individual suffers an injury from the negligence or intentional conduct of a tort-feasor, he or she has a common law action for personal injuries. If the injured person dies of a cause unrelated to the subject injuries, after filing a claim, the action can be revived by the personal representative, and damages are recoverable under the survival statute, § 6-5-462. If the plaintiff dies of his injuries, however, the remedy is under the wrongful death act, § 6-5-410. Bruce v. Collier, 221 Ala. 22, 127 So. 553 (1930); Parker v. Fies & Sons, 243 Ala. 348, 10 So.2d 13 (1942). The rationale of these cases is that, because there is a remedy under the wrongful death act, allowance of an additional personal injury action under the survival statute would work an injustice in that the plaintiff would be permitted to receive a double recovery."
497 So.2d at 124-25.
Although the majority notes differences in beneficiaries, damages, and policies between *1251 personal injury actions and wrongful death actions, the effect of the majority's decision is to allow two recoveries from the same defendant for a single wrongful act.
While I agree that our case law makes no provision for the recovery of compensatory damages suffered by a plaintiff in the event the plaintiff dies as a result of the wrong that proximately caused the loss or injury, I believe that the problem could be solved by revisiting the cases that have construed the phrase "such damages as the jury may assess" in the wrongful death statute to authorize a recovery only of punitive damages. Consequently, instead of overruling what I consider to be well-reasoned precedent in Elam and the cases that Elam follows, I would rather revisit Merrell v. Alabama Power Co., 382 So.2d 494 (Ala.1980), to reconsider whether the legislature intended that only punitive damages be recoverable under the wrongful death statute. Even though I joined the Merrell decision, I believe that the rationale of that case stands on less solid ground than does the decision in Elam. In fact, in Maples v. Chinese Palace, Inc., 389 So.2d 120 (Ala.1980), which was decided only a few months after Merrell, in construing Ala.Code 1975, § 6-5-70, I stated, "I think that the words `such damages as the jury may assess' are broad enough to include the assessment of compensatory damages...." Maples, 389 So.2d at 125 (Maddox, J., dissenting).
Having stated that I think it would be better to re-examine Merrell than to overrule Elam, let me state the reasons to support that belief.
A wrongful death action did not exist at common law, which followed the doctrine of actio personalis moritur cum persona, i.e., "[a] personal right of action dies with the person." Black's Law Dictionary 31 (6th ed. 1990). To provide a remedy for the death of a person who died as a proximate result of a wrongful act, Parliament enacted what came to be known as Lord Campbell's Act, 1846, 9 & 10 Vict., ch. 93 (Eng.), which became the model for most American states, including Alabama. E.g., King v. Henkie, 80 Ala. 505 (1876). The pertinent portion of our wrongful death statute states:
"A personal representative may commence an action and recover such damages as the jury may assess ... for the wrongful act, omission or negligence of any person, persons or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission or negligence if it had not caused death."
Ala.Code 1975, § 6-5-410(a) (emphasis supplied).
For 115 years, ever since Savannah & Memphis R.R. v. Shearer, 58 Ala. 672 (1877), this Court has construed this wrongful death statute and its predecessor, the Homicide Act, to allow recovery of punitive damages only, a position criticized by both bench and bar:
"In the opinion of this writer the mistake was in the first decision under the Homicide Act, for it is evident that the only meaning of the expression, that such damages should be recovered `as the jury may assess,' was that the former statute, which limited the recovery to $3,000, was repealed, and the jury should assess to any amount recoverable under the general principles of the law."
Hull v. Wimberly & Thomas Hardware Co., 178 Ala. 538, 545, 59 So. 568, 570 (1912) (Simpson, J.). I share the view expressed 80 years ago by Justice Simpson that "the mistake was in the first decision under the Homicide Act" limiting the recovery to punitive damages only. It is ironic that in the same year that the Savannah & Memphis R.R. case was decided, this Court, in South & North Alabama R.R. v. Sullivan, 59 Ala. 272, 279 (1877), although reaching the same resultthat the damages recoverable were punitive in nature nevertheless noted:
"And it is none the less punitive because of the direction the statute gives to the damages recovered. The damages, `tis true, go to the estate of the party slain, and, in effect, are compensatory...." *1252 Rather than changing the rule of law relating to survival of causes of actions, and the rule of law that gave rise to the adoption of the first wrongful death statute, I would prefer to admit that, as Justice Houston noted in his dissenting opinion in Tatum v. Schering Corp., 523 So.2d 1042, 1055 (Ala. 1988), "In holding that only punitive damages could be recovered in a wrongful death action, this Court rewrote the statute it purported to construe." 523 So.2d 1042, 1055 (Ala.1988) (emphasis in original). The interpretation of the wrongful death statute by Alabama Courts has also been criticized by legal scholars:
"It is well known that Alabama courts, for more than a century, have interpreted the wrongful death act to allow recovery of only punitive damages. Like an ill-fitting garment, perhaps no rule has necessitated more stretching and hemming to fit the balance of Alabama's legal framework."
Bert S. Nettles and Forrest S. Latta, Alabama's Wrongful Death Statute: A Problematic Existence, 40 Ala.L.Rev. 475, 476 (1989). As the majority notes, this construction is unique among American states, and that construction is what should be changed if something is to be changed. See, Black Belt Wood Co. v. Sessions, 514 So.2d 1249, 1262 (Ala.1986); Nettles & Latta, supra, at 485. Lord Campbell's Act itself allowed compensatory damages. Granville M. Alley, Jr., Comment, Alabama's Wrongful Death Statute, 4 Ala. L.Rev. 75, 75-76 (1951).
Alabama's first statute, in fact, allowed only compensatory damages and placed a $3,000 cap on awards. Black Belt Wood Co., 514 So.2d at 1260. When the statute was amended in 1860 to allow damages in "such sum as the jury deem just," the legislative reports did not give a reason for the change. This Court has acknowledged that Justice Simpson's opinion in Hull, as quoted above, was reasonable: "Arguably, the statute could be construed to mean that the legislature merely removed the limitation on damages contained in the original act." Black Belt Wood Co., 514 So.2d at 1260 (per curiam).
The statute's purpose is to punish the wrongful destruction of life, see, e.g., South & North Alabama R.R. v. Sullivan, 59 Ala. 272, 279 (1877); therefore, I understand how this Court could conclude that only punitive damages may be recovered. This original conclusion was based exclusively on judicial construction, however, and there is little legislative guidance on the question whether damages should be compensatory, punitive, or both. See Black Belt Wood Co., 514 So.2d at 1262. Rather than change what this Court has said on more than one occasion seemed to be an incorrect construction of the statute, this Court has elected instead to say, in effect, that the legislature has readopted the statute from time to time without changing the interpretation this Court has placed on it, and, therefore, that that interpretation must be right. See Richmond & Danville R.R. v. Freeman, 97 Ala. 289, 296-97, 11 So. 800, 802 (1892). That rule of statutory construction is a salutary one, but clearly this Court has the power to change its construction of the wrongful death statute, Black Belt Wood Co., 514 So.2d at 1262-63, especially "to make the law just and to make it conform to public policy." Id. at 1263 n. 1. Likewise, although the legislature has acknowledged the punitive nature of wrongful death damages, see Ala.Code 1975, § 6-11-20, mere recognition of a judicial construction should not be taken as legislative approval.
My concurrence in Merrell and my refusal to join Justice Houston's dissent in Tatum were based upon my belief in the principle of judicial deference. If the law relating to damages for a death caused by a wrongful act is to be changed, then the proper change should be in the prior interpretation this Court has given to Alabama's wrongful death statute, which this Court has questioned on several occasions, not to the interpretation of the survival statute, which has been consistent and never questioned.
As I have already pointed out, in Maples v. Chinese Palace, Inc., 389 So.2d 120 (Ala. 1980), which was decided only a few months after Merrell and which construed Ala.Code 1975, § 6-5-70, I stated, "I think *1253 that the words `such damages as the jury may assess' are broad enough to include the assessment of compensatory damages...." 389 So.2d at 125 (Maddox, J., dissenting).
The majority justifies today's decision by emphasizing the high costs of some personal injuries, which will affect the estate, as a reason for its holding that claims for such injuries survive even when death results from the same wrongful act. By refusing to continue considering the survival statute and the wrongful death statute together, the majority's solution gives effect to an anomalous interpretation of legislative intentthat two actions may be maintained against one defendant for the same wrongful act.
To permit a party to recover compensatory damages in a wrongful death case obviously requires the overruling of prior precedents, but it would appear that the argument for overruling Merrell and other cases holding that only punitive damages are allowed under the wrongful death statute is stronger than the argument for overruling Elam and other cases that were based on a reasonable construction of the survival statute.
In view of today's holding, the legislature should now do what it should have done years ago: amend the wrongful death statute to specify that only compensatory damages can be recovered unless there is a evidence that the wrongful act causing the death was intentional, wilful, or wanton, in which case punitive damages could also be recovered.
HOUSTON, Justice (dissenting).
The majority insists on adhering to this Court's peculiar interpretation of Ala.Code 1975, § 6-5-410. This Court's interpretation of § 6-5-410 is wrong. Tatum v. Schering Corp., 523 So.2d 1042, 1047-63 (Ala.1988) (Houston, J., dissenting). This Court's denial of a remedy for the wrongful deprivation of life is, in my opinion, unconstitutional. The Alabama Constitution in Article I, "Declaration of Rights," acknowledges that there is a "right to life" (§ 1) and provides that "the sole object and only legitimate end of government is to protect the citizen in the enjoyment of life" (§ 35). Are these meaningless words? If so, then why is the right to trial by jury (§ 11), or freedom from double jeopardy (§ 9), or the right to prosecute and defend a civil cause (§ 10), or the right to due process (§§ 6 and 13), not also meaningless words, for they, just like § 1 and § 35, follow these words in the Declaration of Rights: "That the great, general, and essential principles of liberty and free government may be recognized, we declare...."
I am aware that the death rate for human beings is one per person per lifetime, and that no constitution can change that fact. However, the Alabama Constitution, by recognizing life and the enjoyment of life as rights and by providing that there shall be a remedy by due process of law for "any injury done [a human being] in his... person" (emphasis added) (which must include the ultimate injury to the person death) demands that this Court recognize a remedy for the wrongful deprivation of life. Otherwise, this Court would deprive a person of a constitutional right (the right to a remedy) by permitting another person to deprive him of the constitutional right to life (killing him through a negligent, wanton, willful, or intentional act). See King v. Cooper Green Hospital, 591 So.2d 464, 468 (Ala.1991) (Houston, J., concurring in the result).
By adhering to this Court's peculiar approach to wrongful death, this Court has had to resort to all sorts of legal fictions and has been more concerned with upholding judicial error than recognizing individual constitutional rights. See Ex parte Adams, 216 Ala. 241, 113 So. 235 (1927) (personal injury action did not survive if the plaintiff died of the injuries sued upon) (overruled in part, on other grounds, Parker v. Fies & Sons, 243 Ala. 348, 10 So.2d 13, 16 (1942)).
The majority of this Court now seeks to correct the legal fiction announced in Ex parte Adams, without correcting the judicial error that led to that legal fiction. The majority is now putting new wine in an old *1254 wineskin, which may have results that I cannot foresee. Ala.Code 1975, § 6-5-410, should be interpreted as providing a remedya private compensatory remedy for a private, personal right. Tatum v. Schering Corp., 523 So.2d at 1049-55 (Houston, J., dissenting). This would comport with the Constitution; however, that statute is still interpreted as "not to compensate or recompense any one, but to mete civil punishment to the wrongdoer, and thereby prevent homicides." Kennedy v. Davis, 171 Ala. 609, 613, 55 So. 104 (1911). While this is a laudable purpose and one that can be shared by all citizens of the state to promote the state's public policy, it does not provide a private compensatory remedy for an individual right that Kenneth A. Halpern was deprived of, if the trier of fact finds that the defendants' negligence, wantonness, willfulness, or intentional act deprived Halpern of life. With the damages recoverable under § 6-5-410 being only punitive, the imposition of such damages "is entirely discretionary with the jury" (see Alabama Pattern Jury Instructions: Civil, 11.03), even if Halpern was deprived of life by the wrongful conduct or omission of the defendants. The remedy for the violation of a constitutional right must be made of firmer stuff than that.
Therefore, no matter how laudable the recognition of some constitutional rights may be, the majority opinion falls far short of recognizing all constitutional rights of a decedent.
The law surrounding § 6-5-410 has developed in its own particular way to provide something that no other state has. Since the majority will not reassess its interpretation of § 6-5-410, I will not concur to graft onto this judicial creature something that the majority of this Court has concluded, prior to the majority opinion in this case, is incompatible with its creation. However, I will not refuse to recognize a constitutional right just because the majority of this Court has refused to recognize all constitutional rights, but I will recognize such rights only as I believe they should be recognized. Since one may waive a constitutional right, I would hold that a personal representative of a decedent could waive his constitutional right to a remedy for an injury that ultimately resulted in the wrongful deprivation of life and to any compensatory damages to which he would be constitutionally entitled between injury and death and subsequent to death, and proceed under § 6-5-410 to recover only what the majority of this Court has consistently held can be recovered under § 6-5-410. I would also hold that if the personal representative chose not to waive his decedent's constitutional right, then, in lieu of proceeding under § 6-5-410, he could recover all compensatory damages resulting from the injury, including death, and punitive damages too, but only if the acts of the defendant or defendants were such that punitive damages could have been recovered if death had not resulted.
NOTES
[1] Elam also cites Price v. Southern Ry., 470 So.2d 1125 (Ala.1985), but that case had unusually postured facts involving breach of warranty claims and also it generally relies on the Parker case. Accordingly, we do not view Price as crucial background precedent in the analytical history of Elam.
[2] Carbon Hill overruled Mattison's holding that the spouse of an injured worker could maintain a separate claim for loss of consortium despite the exclusivity provision of the Worker's Compensation Act. Mattison was overruled only "to the extent that it conflicts with Murdock [v. Steel Processing Services, Inc., 581 So.2d 846 (Ala. 1991),] and with our holding in this case concerning the exclusivity provision of the [Worker's Compensation] Act." Carbon Hill, 602 So.2d at 356.